In the Matter of H. EARL FULLILOVE et al., as Trustees of the New York Building and Construction Industry Board of Urban Affairs Fund, Respondents, v HUGH L. CAREY, as Governor and Chief Executive Officer of the State of New York, et al., Appellants.

Third Department, July 6, 1978

## APPEARANCES OF COUNSEL

*Louis J. Lefkowitz, Attorney-General (Samuel A. Hirshow-itz, George D. Zuckerman, Dominick J. Tuminaro* and *Arnold D. Fleischer* of counsel), for Hugh L. Carey, appellant.

*Ann Thacher Anderson (Rosamond Prosterman* of counsel), for Office of State Contract Compliance, Division of Human Rights, appellant.

*Berman, Paley, Goldstein & Berman (Robert G. Benisch* of counsel), for respondents.

## OPINION OF THE COURT

HERLIHY, J.

On January 4, 1977 appellant, Governor Carey, promulgated Executive Order No. 45. (9 NYCRR 3.45.) That order provided, among other things, that all New York State and State agency contracts shall include language providing for the contractor to undertake affirmative action programs; for the submission by contractors, before a contract is awarded, of an affirmative action program as required by the rules and regulations of the Commissioner of Human Rights; that such programs shall include provisions requiring certain "goals" of minority manpower utilization; and that the Commissioner of Human Rights shall adopt such rules and regulations as he deems necessary and appropriate to effectuate the order. Executive Order No. 45 became effective 30 days after January 4, 1977.

The petitioners are unincorporated labor organizations, building and construction industry associations, officers representing union members and contract employers involved in the building and construction industry in New York State. They have in the past and may in the future be involved with New York State construction contracts.

An article 78 proceeding was commenced seeking a declara-

tion that Executive Order No. 45 was unconstitutional and for injunctive relief. The Supreme Court converted the proceeding into one for a declaratory judgment and, *inter alia,* determined that Executive Order No. 45 improperly extends and expands statutory requirements and was therefore an unconstitutional exercise of legislative power by the Governor. Appellants appeal this determination.

The issues before Special Term and considered again on this appeal are whether or not the challenged order exceeds the authority of the executive, and a general question related to whether or not the petitioners have standing to challenge the order in the absence of further implementation.

We do not doubt the good intentions of the Governor or the wisdom of the proposed order or the policy it allegedly seeks to enforce. We are concerned with a fundamental constitutional issue as to whether promulgation of Executive Order No. 45 exceeds the authority of the Governor inasmuch as the said order impinges on the legislative branch of government. It is just as important, probably more so, in this day and age, as it was when our system of self-government was adopted, to keep the line of demarcation between the executive and legislative branches of government reasonably definitive and not to permit unnecessary encroachment or overlapping by either branch of government (see *Rapp v Carey,* 44 NY2d 157; *Matter of Broidrick v Lindsay,* 39 NY2d 641).

It is fundamentally for these reasons that we disagree with the assertion that the issue of the validity of Executive Order No. 45 should be avoided because of some possible "future legal proceedings" which might result *if* this court should find the order to be a constitutional exercise of the executive power.

As so well stated by Special Term (91 Misc 2d 528, 533): "Where an executive order extends and expands requirements of statutes, it does not serve the enforcement function and therefore constitutes an unwarranted exercise of legislative power. *(Rapp v Carey,* 88 Misc 2d 428, aff 58 AD2d 918, affd 44 NY2d 157.) The court is unable to perceive any significant distinction between the case at bar and *Matter of Broidrick v Lindsay* (39 NY2d 641), which involved a similar executive order promulgated by the Deputy Mayor of the City of New York. It was there held that legislation prohibiting discrimination in employment * * * requires executive enforcement * * *. Yet, executive action in enforcing such legislation may

not go beyond stated legislative policy and prescribe a remedial device not embraced by the policy." *(Matter of Broidrick v Lindsay, supra,* p 645.)

Whether the order exceeds the authority of the executive cannot be decided, indeed *cannot* be left in a state of limbo, premised upon a subdivision of one article of the order. (See, e.g., art II, § 2.9.) The Legislature did not see fit to encompass in the statutes an affirmative action program nor did it require that contractors *must* submit a program of affirmative action (see statutes cited by appellants as supporting the order —Labor Law, § 220-e; § 815, subd 5; Civil Rights Law, §§ 40-c, 43; Executive Law, § 296, subd 12; § 296, subd 1, pars [a] and [c]; § 296, subd 1-a; § 295, subds 9 and 4; §§ 294, 291 and 290).

While section 220-e of the Labor Law clearly requires that State construction contracts shall contain a provision prohibiting discrimination by a contractor on account of "race, creed, color, sex or national origin", and subdivision 12 of section 296 of the Executive Law (Human Rights Law) provides that it is not an unlawfully discriminatory practice for an employer to carry out an agency approved affirmative action program, neither of these statutes implies that contractors *must* establish affirmative action programs *regardless of their present status as discriminators* (active or passive) or nondiscriminators.

Executive Order No. 45 goes beyond any specific requirement that contractors follow nondiscriminatory hiring practices and beyond the mere requirement that rules and regulations or programs be developed by the Commissioner of Human Rights. "The order reaches beyond that, and assumes the power of the Legislature to set State policy in an area of concededly increasing public concern." *(Rapp v Carey, supra,* p 160.)

Since the order required certain action by the petitioners contractors dehors the existence of any rules and regulations, there is a present justiciable controversy as to the legality-enforceability of Executive Order No. 45 and, accordingly, there is no lack of present standing to maintain this action.

The order is in excess of the executive power of the Governor and, therefore, unenforceable for the reasons set forth in the opinion at Special Term and upon the considerations set forth in this decision the declaration set forth in the order of Special Term is appropriate.

The judgment should be affirmed, without costs.

MAHONEY, P. J. (dissenting). Petitioners, unincorporated labor organizations, building and construction industry associations, union officials and contractor employers, commenced an article 78 proceeding attacking Executive Order No. 45 on the ground that Governor Carey exceeded his executive authority in requiring petitioners and others to undertake affirmative action programs and submit the same in connection with contracts sought to be concluded with State agencies.* Such affirmative action programs are to be in accord with rules and regulations to be promulgated by the Commissioner of Human Rights and shall include, at a minimum, *"provisions requiring contractors to achieve goals and time tables designed to reflect adequate utilization of minority group persons and women."* (Executive Order No. 45, art II, § 2.9; emphasis added.) Section 1.1 of article I of the order establishes in the Division of Human Rights, an Office of State Contract Compliance (OSCC) which, under the direction of the Commissioner of Human Rights, shall administer, co-ordinate implementation and enforce the promulgated provisions. Sanctions for noncompliance by contractors may be contract cancellation, termination, or absolute suspension or continuance conditioned upon a program for future compliance. Additionally, contractors or subcontractors may be declared ineligible for future contracts for a period of two years and may not contract with State contractors during that period.

This inquiry begins with recognition of the legislative right, indeed, the duty, to provide equal opportunity in employment and training for all persons regardless of race, creed, color, national origin, sex, age, disability or marital status (cf. Labor Law, § 220-e; Labor Law, § 815, subd 5; 12 NYCRR 600.5; Executive Law, § 290; § 296, subd 1, pars [a], [c]; § 296, subd 12; Civil Rights Law, §§ 40-c, 43). The enforcement of State law and policy against discrimination constitutes a proper exercise of the Governor's constitutional responsibility and authority. (NY Const, art IV, § 3.) Juxtaposition of the legislative duty to prescribe and the executive's duty to enforce in this sensitive area raises the sole issue for our review. Did Governor Carey, by promulgation of Order No. 45, create a different policy, not embraced in the legislation, toward employment practices of contractors now working or who might work in the future on State contracts? If our answer is in the

---

* Special Term correctly converted the article 78 proceeding to an action for declaratory judgment (CPLR 103, subd [c]).

affirmative, the Executive Order must be struck as an impermissible exercise of legislative power vested in the State Legislature (NY Const, art III, § 1).

Subdivision 3 of section 290 of the Executive Law not only affirmatively declares that the State has the responsibility to act to assure that every individual is afforded an equal opportunity for employment, it vests in the State Division of Human Rights not only the power to eliminate discrimination, but also the authority "to encourage programs designed to insure that every individual shall have an equal opportunity to participate fully in the economic * * * life of the state", and "to encourage and promote the development and execution by all persons within the state of such state programs * * * and to take other actions against discrimination". Significantly, subdivision 12 of section 296 of the Executive Law expressly provides that "it shall not be an unlawful discriminatory practice for an employer * * * to carry out a plan, approved by the division, to increase the employment of members of a minority group * * * which has a state-wide unemployment rate that is disproportionately high in comparison with the state-wide unemployment rate of the general population. Any plan approved under this subdivision shall be in writing and the division's approval thereof shall be for a limited period and may be rescinded at any time by the division." The above-cited legislation clearly enunciates a State concern and policy of nondiscrimination, and, further, where exigent circumstances causing disproportionately high unemployment among a particular minority group obtains, the State legislatively *permits* employers to create and carry out affirmative action plans similar in content to programs, which if *enforced* under Order No. 45, would arguably be unconstitutional. Thus, the issue narrows to whether the executive, by order, may *mandate* and *require* what the Legislature has deemed to *permit* in the exigent circumstances set forth above. Resolution of the issue as refined requires a comprehensive review of Order No. 45 to determine if it merely restates the policy of the State as legislatively declared, or impermissibly moves beyond the ambit of the law and regulates in an area constitutionally reserved to the Legislature. Such review narrows again to section 2.9 of article II of the order which, in pertinent part, defines affirmative action programs as programs adopted by the Commissioner of Human Rights which require contractors *"to achieve*

*goals and time tables* designed to reflect adequate utilization of minority group persons and women." (Emphasis added.)

It is unnecessary to determine whether the requirement that the affirmative action plan be formulated in a manner "to achieve goals and time tables" is more reasonably equated with an executive command to employ a certain "percentage" or "quota" of minorities, and thereby properly earn the interdiction of invalidity *(Matter of Broidrick v Lindsay,* 39 NY2d 641), or with a permissible policy limited to increasing the pool of eligibles for employment, by including previously excluded minority workers *(id.,* p 647). Here, unlike *Broidrick,* there has been no promulgation of rules and regulations by the Commissioner of Human Rights. In *Broidrick* it was the promulgated rules, not the Deputy Mayor's Executive Order, that were declared to be invalid. Here, we have no rules or regulations and, thus, no way of knowing if the commissioner in formulating such rules and regulations shall direct that affirmative action plans be drawn by petitioners and others so as to enlarge the pool of eligible minority workers, or that such programs provide for "percentages" or "quotas" of such employees. Indeed, given the many areas of the law governing the contractor-State relationship, I do not know if regulations, when issued, will constitutionally offend in ways we cannot now perceive. Therefore, it would appear that Executive Order No. 45, absent implementing rules and regulations, does no more than declare the established policy of this State with respect to job discrimination as that policy has been legislatively outlined. It follows, therefore, that judicial declaration determining the rights of the parties herein, despite present evidence that the possible injury to petitioners is more than just speculative, would be hazardous indeed and might be construed as defining an area within which the commissioner could safely regulate, only to discover, after the issuance of such rules, that we had prescribed in a manner more conducive to future legal proceedings than dispositive of the present one.

I, therefore, conclude that declaratory judgment should be withheld until the Commissioner of Human Rights promulgates rules and regulations implementing Executive Order No. 45 *(Prashker v United States Guar. Co.,* 1 NY2d 584).

The judgment should be reversed, and the complaint dismissed.

GREENBLOTT, MAIN and MIKOLL, JJ., concur with HERLIHY,

J.; MAHONEY, P. J., dissents and votes to reverse in a separate opinion.

Judgment affirmed, without costs.