In the Matter of WAYNE PROSPECT et al., Respondents, v PETER F. COHALAN, as County Executive of the County of Suffolk, Appellant, and LONG ISLAND LIGHTING COMPANY, Intervenor-Respondent.

In the Matter of the TOWN OF SOUTHAMPTON et al., Respondents, v PETER F. COHALAN, as County Executive of the County of Suffolk, Appellant, and LONG ISLAND LIGHTING COMPANY, Intervenor-Respondent.

Second Department, June 24, 1985

**APPEARANCES OF COUNSEL**

*Reisman, Peirez, Reisman & Calica* (*Robert M. Calica* and *Thomas P. Schulz* of counsel), for appellant.

*Twomey, Latham & Shea* (*Stephen B. Latham, John F. Shea, III,* and *Lawrence M. Storm* of counsel), for respondent towns,

and *Reilly, Like & Schneider,* and *Lester B. Lipkind* for respondent legislators. (One brief filed.)

*Rosalind M. Gordon* and *Anthony F. Earley, Jr.* (*Hunton & Williams* [*David R. Marshall, W. Taylor Reveley, III, K. Dennis Sisk* and *Kathy E. B. McCleskey*] of counsel), for Long Island Lighting Company, intervenor-respondent.

*Robert Abrams, Attorney-General* (*Peter Bienstock, Alfred L. Nardelli* and *Mary M. Gundrum* of counsel), and *Fabian Palomino* for State of New York, *amicus curiae.* (One brief filed.)

## OPINION OF THE COURT

Per Curiam.

The issue presented on this appeal involves the validity of Executive Order 1-1985 issued on May 30, 1985, by appellant Peter F. Cohalan, the County Executive of Suffolk County, purportedly pursuant to the provisions of Executive Law article 2-B and Suffolk County Charter § 302. The executive order directed the Commissioners of the Police and Planning Departments of Suffolk County to utilize whatever resources might be necessary to "complete a review and evaluation * * * and carry out and cause to be conducted a test and exercise" of a local emergency response plan presently before the United States Nuclear Regulatory Commission and the Federal Emergency Management Agency in connection with the operation of the Shoreham nuclear facility. We begin with a review of the facts.

In 1973, Long Island Lighting Company (LILCO) obtained a permit from the Atomic Energy Commission for the construction of an 820-megawatt nuclear powered facility to be located at Shoreham in the Town of Brookhaven, Suffolk County. Three years later, LILCO commenced proceedings to obtain an operating license for the Shoreham nuclear plant. While the licensing proceedings were pending, the United States Congress, in response to the 1979 accident at the Three Mile Island Nuclear Facility in Harrisburg, Pennsylvania, determined that no nuclear plant should be licensed to operate unless an adequate emergency plan could be devised and implemented for the area surrounding the nuclear facility. In accordance with this legislative determination, the Nuclear Regulatory Commission (NRC) promulgated a series of regulations which required the submission of an adequate radiological emergency response plan (RERP) by an applicant desirous of operating a nuclear facility. Pursuant to these regulations, an operating license will be issued only if the NRC is reasonably assured that adequate

measures can be taken to protect the area surrounding the nuclear facility in the event of a radiological emergency.

In an effort to comply with the newly enacted NRC regulations, LILCO and representatives of the County of Suffolk entered into an agreement, embodied in Suffolk County Resolution 694-1981, for the preparation of a RERP for the Shoreham nuclear facility under the direction of the County Planning Department. That agreement provided that LILCO would advance the sum of $150,000 to the county in order to meet the projected cost of preparing the plan, with an additional $95,000 to be paid to the county upon completion of the plan.

In March 1982, the county determined that, in order to avoid any appearance of a conflict of interest, it would return the $150,000 advance received from LILCO for the RERP and complete the plan at the county's expense. Accordingly, on March 23, 1982, the Suffolk County Legislature adopted Resolution 262-1982 which directed the return of the $150,000 advanced by LILCO and provided, in pertinent part:

"RESOLVED, that the County Planning Department shall prepare a County Radiological Emergency Response Plan to serve the interest of safety, health and welfare of the residents of Suffolk County; and it be further

"RESOLVED, that said plan shall not be operable and shall not be deemed adequate and capable of being implemented until such time as it is approved by the Suffolk County Legislature; and

"RESOLVED, that only after said plan is approved by the Suffolk County Legislature, shall it be submitted to the Federal Emergency Management Agency and the Nuclear Regulatory Commission for purposes of any findings, determinations, rulings, reviews, or hearings by such Federal agencies".
Resolution 262-1982 was approved and signed by appellant Cohalan on March 25, 1982.

On May 18, 1982, the Suffolk County Legislature adopted Resolution 456-1982 which established the RERP policy of the county. The resolution provided in pertinent part:

"RESOLVED, that Suffolk County hereby established the following Radiological Emergency Response Planning Policy:

"Suffolk County shall not assign funds or personnel to test or implement any radiological emergency response plan for the Shoreham Nuclear Plant unless that plan has been fully developed to the best of the County's ability.

"Suffolk County shall not assign funds or personnel to test or implement any radiological emergency response plan for the Shoreham Nuclear Plant unless that plan has been the subject of at least two public hearings, one to be held in Riverhead, and one to be held in Hauppauge.

"Suffolk County shall not assign funds or personnel to test or implement any radiological emergency response plan for the Shoreham Nuclear Plant unless that plan has been approved, after public hearings, by the Suffolk County Legislature and the County Executive."

This resolution was approved and signed by appellant Cohalan on May 19, 1982.

The Suffolk County Planning Department, in accordance with these resolutions, submitted a RERP to the County Legislature in December 1982. Several public meetings were thereafter conducted by the Legislature during January 1983. On February 17, 1983, the Legislature adopted Resolution 111-1983 in which it resolved that it would not approve, adopt or implement any RERP for the Shoreham facility. The resolution provided, in pertinent part:

"RESOLVED, that the Draft County plan submitted to the County Legislature on December 2, 1982, if implemented, would not protect the health, welfare, and safety of Suffolk County residents and thus is not approved and will not be implemented; and be it further * * *

"RESOLVED, that since no local radiological emergency response plan for a serious nuclear accident at Shoreham will protect the health, welfare, and safety of Suffolk County residents, and since the preparation and implementation of any such plan would be misleading to the public by indicating to County residents that their health, welfare, and safety are being protected when, in fact, such is not the case, the County's radiological emergency planning process is hereby terminated, and no local radiological emergency plan for response to an accident at the Shoreham plant shall be adopted or implemented; and be it further

"RESOLVED, that since no radiological emergency plan can protect the health, welfare, safety of Suffolk County residents and, since no radiological emergency plan shall be adopted or implemented by Suffolk County, the County Executive is hereby directed to take all actions necessary to assure that actions taken by any other governmental agency, be it State or Federal, are consistent with the decisions mandated by this Resolution."

This resolution was similarly approved and signed by appellant Cohalan on February 23, 1983.

Following the county's refusal to adopt a RERP, LILCO submitted its own plan to the NRC, designated as "The LILCO Transition Plan". The plan described in detail the actions which LILCO proposed to take if a radiological emergency occurred at the Shoreham facility. Thereafter, the State, the County of Suffolk and the Town of Southampton instituted separate declaratory judgment actions against LILCO in the Supreme Court, Suffolk County, seeking a declaration that LILCO did not have legal authority to implement its plan. By decision dated February 20, 1985, the court (Geiler, J.), held that LILCO's actions constituted an usurpation of governmental powers (*Cuomo v Long Is. Light. Co.*, NYLJ, Apr. 19, 1985, p 16, col 3). Similarly, on April 17, 1985, the Atomic Safety and Licensing Board of the NRC, which held hearings on LILCO's Transition Plan, also determined that LILCO did not have the legal authority to implement its own plan and that, accordingly, LILCO did not have an implementable, comprehensive and effective RERP for its Shoreham plant.

Thereafter, on May 30, 1985, without consulting with the County Legislature, appellant Cohalan issued Executive Order 1-1985, which provided: "By the power vested in me under Article 2-B of the New York State Executive Law and § 302 of the Suffolk County Charter, I hereby determine that it is necessary for me to cause to be reviewed and evaluated the Local Emergency Response Plan for Suffolk County presently before the United States Nuclear Regulatory Commission and the Federal Emergency Management Agency. I therefore direct the Commissioner of Police and the Commissioner of the Suffolk County Planning Department to use whatever resources of the County Government of the County of Suffolk are necessary in order to complete a review and evaluation of the above Local Emergency Response Plan and carry out and cause to be conducted a test and exercise of the above said plan in conjunction with the Local Emergency Response Organization (LERO). I further direct that agents of the County of Suffolk assume the function of command and control with implementation of the police powers of the County of Suffolk over the conduct of said test and exercise."

In response, the petitioners herein (several individual Suffolk County Legislators and four Suffolk County towns) instituted the instant CPLR article 78 proceedings to challenge the legality of appellant Cohalan's Executive Order 1-1985, contending

that the order violated the provisions of Executive Law article 2-B and County Law § 153, as well as the Suffolk County Charter, in that appellant Cohalan was attempting to usurp the power of the County Legislature and that his action was in contravention of the aforementioned three resolutions duly adopted by the Legislature pertaining to a RERP for the Shoreham facility. Following an expedited hearing, Special Term determined that, by issuing Executive Order 1-1985, appellant Cohalan had exceeded his authority under both Executive Law article 2-B, and the Suffolk County Charter. Accordingly, the court, *inter alia,* annulled the order and enjoined appellant Cohalan, his agents, and employees, from taking any action "to enforce, implement or carry out the directions, policies, or terms" of the order "or any directive or instruction relating thereto". We conclude there should be an affirmance.

Executive Law article 2-B, entitled "State and Local Natural and Man-Made Disaster Preparedness", sets forth the State's policy and procedure for preparing for and dealing with emergency and disaster situations. Executive Law § 20, which delineates the State's general policy concerning disasters and disaster preparedness, provides, in pertinent part:

"1. It shall be the policy of the state that:

"a. local government and emergency service organizations continue their essential role as the first line of defense in times of disaster, and that the state provide appropriate supportive services to the extent necessary;

"b. *local chief executives take an active and personal role in the development and implementation of disaster preparedness programs and be vested with authority and responsibility in order to insure the success of such programs;*

"c. state and local natural disaster and emergency response functions be coordinated in order to bring the fullest protection and benefit to the people;

"d. state resources be organized and prepared for immediate effective response to disasters which are beyond the capability of local governments and emergency service organizations; and

"e. state and local plans, organizational arrangements, and response capability required to execute the provisions of this article shall at all times be the most effective that current circumstances and existing resources allow" (emphasis added).

The term "chief executive" as used in Executive Law article 2-B is defined, in relevant part, as "a county executive or manager of a county" (Executive Law § 20 [2] [f] [1]).

Relying primarily on the policy considerations set forth in section 20 (1) (b), as supplemented by the ensuing sections in article 2-B, appellant Cohalan, in essence, contends that under the circumstances of this case he has the authority, independent of the Suffolk County Legislature, to develop and implement disaster preparedness plans and that, therefore, Executive Order 1-1985 is a valid exercise of that authority. In our view, appellant Cohalan has construed too broadly the powers granted to him as Chief Executive of Suffolk County under the provisions of article 2-B.

The law is settled that in interpreting statutory authority, specific provisions of the statute must prevail over the general provisions (*People v Mobil Oil Corp.*, 48 NY2d 192, 200; McKinney's Cons Laws of NY, Book 1, Statutes § 238). Thus, it is clear that while the general policy considerations contained in Executive Law § 20 (1) (b) encourage the chief executives of local governments within the State to take an active role in developing disaster preparedness programs, the specific powers conferred on local chief executives under article 2-B are limited to instances in which a disaster has occurred or there exists an immediate threat thereof. On this point, Executive Law § 24 (1) is particularly instructive: "1. Notwithstanding any inconsistent provision of law, general or special, *in the event of a disaster,* rioting, catastrophe, or similar public emergency *within the territorial limits of any county,* city, town or village, *or in the event of reasonable apprehension of immediate danger thereof, and upon a finding by the chief executive thereof that the public safety is imperiled thereby, such chief executive may proclaim a local state of emergency within any part or all of the territorial limits of such local government; provided, however, that in the event of a radiological accident as defined in section twenty-nine-c of this article, such chief executive may request of the governor a declaration of disaster emergency. Following such proclamation and during the continuance of such local state of emergency, the chief executive may promulgate local emergency orders to protect life and property or to bring the emergency situation under control*" (emphasis added).

Like Executive Law § 24, other sections in article 2-B confer upon local chief executives specific powers to act in response to an emergency. For example, Executive Law § 25 (1) mandates that local chief executives, "[u]pon the threat or occurrence of a disaster * * * use any and all facilities, equipment, supplies, personnel and other resources" to cope with emergencies. Executive Law § 26 (1) authorizes local chief executives, "[u]pon the threat or occurrence of a disaster", to coordinate responses to

requests for assistance from other political subdivisions in the county and to utilize any disaster preparedness or civil defense plans which have been prepared. Also, Executive Law § 29-b (2) provides that county chief executives may, "[u]pon the threat or occurrence of a disaster, and during and immediately following the same", direct the civil defense director of the county to assist in the protection and preservation of human life and property. Significantly, appellant Cohalan concedes that no disaster or threat thereof presently exists.

No provision in Executive Law article 2-B expressly confers upon local chief executives the power to develop disaster preparedness plans. Rather, the New York State Legislature expressly granted that power to "each county" pursuant to Executive Law § 23 (1), which provides that, "1. *Each county,* except those contained within the city of New York, and each city *is authorized to prepare disaster preparedness plans.* The disaster preparedness commission shall provide assistance and advice for the development of such plans" (emphasis added).

Notwithstanding this statutory language, appellant Cohalan interprets "county" in section 23 (1) to include "county executive". This interpretation is predicated on what appellant Cohalan concludes is the "evident legislative mandate" of article 2-B. As a corollary, appellant Cohalan argues that he possesses the implied authority to plan for the occurrence of a disaster or the threat thereof.

Although the term "county" is not defined in the Executive Law, reference may profitably be made to the County Law. Section 153 (1) provides that, "1. A power of the county, whether in terms vested in the county or in the board of supervisors shall, *except as otherwise expressly provided,* be exercised through a local law or resolution duly adopted by the board" (emphasis added). Moreover, County Law § 153 (6) reserves to the county legislature, the "power to amend, repeal or supersede any local law or resolution theretofore adopted".

By enacting Executive Law article 2-B, the State Legislature distinguished between the roles to be played by the "county" and the "chief executive". Specifically, the State Legislature vested local chief executives with the power to *respond* to a local disaster or the immediate threat of a disaster (*see,* Executive Law § 24 [1]; §§ 25, 26, 29-b), whereas the local legislative bodies were endowed with the power to *plan and prepare* for a disaster (*see,* Executive Law § 23 [1]). This delegation of functions reflects an awareness by the State Legislature that in emergency situations prompt and immediate unilateral action is necessary

to preserve and protect life and property, the accomplishment of which would be frustrated if left to a deliberative body such as a county legislature. On the other hand, given the magnitude of the problem, the process of planning for a disaster requires a deliberative body, such as a county legislature, to gather relevant information from a multitude of sources, including governmental agencies, the local chief executive, community action groups and the general public. This is made clear in Executive Law § 23 (5): "In preparing [disaster preparedness] plans, cooperation, advice and assistance shall be sought from local government officials, regional and local planning agencies, police agencies, fire departments and fire companies, local civil defense agencies, commercial and volunteer ambulance services, health and social services officials, community action agencies, organizations for the elderly and the handicapped, other interested groups and the general public. Such advice and assistance may be obtained through public hearings held on public notice, or through other appropriate methods."

Based on all of the foregoing, we conclude that the term "county" as contained in Executive Law § 23 (1) cannot be construed to include "county executive", and that appellant Cohalan's authority to issue Executive Order 1-1985 is not implicit in article 2-B. The State Legislature has delegated separate and distinct functions to chief executives and county legislatures under article 2-B. There being a distinction in that article between "county" and "county executive", we decline to read into the term "county" that which the State Legislature has obviously chosen to omit. Moreover, had the Legislature intended to delegate this planning function to the "county executive" it would have expressly done so.

Nor do the sections of the Suffolk County Charter relied upon by appellant Cohalan salvage his executive order. Section 302 establishes the county executive as the chief executive officer of the Suffolk County government. Section 303 (a) vests the county executive with the power to supervise all administrative units within the county. In addition, section 1202 (a) and section 1301 of the charter provide that the Commissioner of the Police Department and the Planning Director of the Planning Department of Suffolk County are appointed by the county executive with the approval of the county legislature, and serve at the pleasure of the county executive. However, section 303 (d) places a limitation on the power of the county executive in that it states that he is obligated to "take care that the laws applicable to the county and that local laws and *resolutions* of the county are faithfully executed" (emphasis added). Executive Order 1-1985

does not faithfully execute, implement or carry out the policy decisions contained in the resolutions of the Suffolk County Legislature. In fact, the order conflicts with the explicit terms of Resolutions 456-1982 and 111-1983 which state, *inter alia,*

"RESOLVED * * * Suffolk County shall not assign funds or personnel to test or implement any radiological emergency response plan for the Shoreham Nuclear Plant unless that plan has been approved, after public hearings, by the Suffolk County Legislature and the County Executive.

"RESOLVED, that since no radiological emergency plan can protect the health, welfare, safety of Suffolk County residents and, since no radiological emergency plan shall be adopted or implemented by Suffolk County, the County Executive is hereby directed to take all actions necessary to assure that actions taken by any other governmental agency, be it State or Federal, are consistent with the decisions mandated by this Resolution."

However desirable appellant Cohalan may believe the purpose of Executive Order 1-1985 to be, he does not have either the express or implied authority under Executive Law article 2-B to act unilaterally to develop, review, test and implement a disaster preparedness plan. Accordingly, appellant Cohalan's actions in this case constituted an usurpation of the legislative function specifically delegated in article 2-B (*see, Subcontractors Trade Assn. v Koch,* 62 NY2d 422; *Matter of County of Oneida v Berle,* 49 NY2d 515; *Matter of Fullilove v Beame,* 48 NY2d 376; *Matter of Broidrick v Lindsay,* 39 NY2d 641). Moreover, appellant Cohalan's directive that a RERP for the Shoreham facility be reviewed, evaluated, tested and exercised was in excess of his jurisdiction under the Suffolk County Charter since it contravenes the terms of Resolutions 456-1982 and 111-1983.

Our determination should not be interpreted as precluding appellant Cohalan from pursuing whatever legislative or other avenues may be available in order to advance his position with respect to the Shoreham facility, including the exercise of any independent power he may possess under the Suffolk County Charter, in a manner not inconsistent with the law.

MOLLEN, P. J., MANGANO, BROWN, WEINSTEIN and RUBIN, JJ., concur.

Judgment of the Supreme Court, Suffolk County, dated June 10, 1985, affirmed, without costs or disbursements.

Application by appellant Cohalan for leave to appeal to the Court of Appeals is hereby granted.