# State of New York
## Supreme Court, Appellate Division
### Third Judicial Department

Decided and Entered:  June 11, 2015                    520349

_____

LENORA PIERCE,

                    Appellant-
                    Respondent,

        v                              MEMORANDUM AND ORDER

STEVEN W. HICKEY et al.,

                    Respondents-
                    Appellants.

_____


Calendar Date:  April 30, 2015

Before:  Lahtinen, J.P., Garry, Egan Jr. and Rose, JJ.

_____


        Kenneth Goldblatt, Mohegan Lake (Lee Greenstein, Delmar, of
counsel), for appellant-respondent.

        Murphy, Burns, Barber & Murphy, LLP, Albany (James J. Burns
of counsel), for respondents-appellants.

_____


Egan Jr., J.

        Cross appeals from an order of the Supreme Court (Connolly,
J.), entered September 26, 2014 in Schoharie County, which, among
other things, denied plaintiff's motion for partial summary
judgment.

        On or about August 28, 2011, Hurricane Irene caused
extensive flooding to homes, businesses and buildings located in
and throughout, among other places, Schoharie County.  A local
state of emergency was declared and cleanup measures ensued.
Thereafter, on or about September 7, 2011, Tropical Storm Lee
struck Schoharie County, bringing with it additional rain and
flooding and generating additional storm debris.

At all times relevant here, defendant Steven W. Hickey was a machine equipment operator employed by defendant County of Schoharie in its Department of Public Works (hereinafter DPW). On September 13, 2011, Hickey, who normally drove a closed container recycling truck for the County, was tasked with transporting open containers of storm debris – specifically, building debris from the DPW garage – on a truck to a nearby regional transfer station for disposal. As Hickey proceeded north on State Route 30A in the Town of Schoharie, Schoharie County, a pickup truck operated by plaintiff approached from the opposite direction. When the two vehicles were roughly parallel to one another, Hickey observed – through the driver's mirror – "something come off the truck." Hickey slowed his vehicle and came to a stop, whereupon he noticed various building materials – sheetrock, plywood and sections of two-by-fours – and other flood debris scattered across the pavement. One of those items of debris, variously described by plaintiff as "an honest to goodness piece of lumber" and "a really big board," flew through plaintiff's open driver's-side window and struck her in the head just behind her left ear.

Plaintiff thereafter commenced this personal injury action against defendants. Following joinder of issue and discovery, plaintiff moved for summary judgment on the issue of liability, contending that defendants failed to secure the top of the open container with some type of cover as required by Vehicle and Traffic Law § 380-a (1). Defendants then cross-moved for summary judgment dismissing the complaint, arguing, among other things, that they were immune from liability under Executive Law § 25 (5). Supreme Court denied the parties' respective motions, prompting these appeals.

Turning first to defendants' cross appeal, Supreme Court correctly concluded that plaintiff was not required to individually list Hickey on the underlying notice of claim. Simply put, neither County Law § 52 nor the provisions of General Municipal Law §§ 50-e (2) and 50-i (2) require that an individual municipal employee be named in the notice of claim. Notably, the purpose underlying the notice of claim requirement – to provide a municipality with sufficient information to enable it to promptly investigate the subject claim and ascertain its potential

exposure to liability (see Brown v City of New York, 95 NY2d 389, 394 [2000]) — "may be served without requiring a plaintiff to name the individual agents, officers or employees in the notice of claim" (Goodwin v Pretorius, 105 AD3d 207, 216 [2013]).  Thus, dismissal of the complaint against Hickey upon this ground was not warranted.

Defendants' assertion that they are entitled to immunity under Executive Law § 25 (5) is equally unavailing.  Executive Law § 25 governs a municipality's allocation and use of governmental resources, e.g., equipment, supplies and/or personnel, upon the threat or occurrence of a local disaster.  To that end, the statute provides that "[a] political subdivision shall not be liable for any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of any officer or employee carrying out the provisions of this section" (Executive Law § 25 [5]).  Citing, among other things, the looming public health crisis allegedly brought about by the large volume of debris generated in the wake of Hurricane Irene and Tropical Storm Lee, defendants contend that they cannot be held liable for the manner in which they elected to transport debris from the DPW garage on the date of plaintiff's accident.

As a starting point, we do not interpret Executive Law § 25 as being subject to the temporal limitations set forth in Executive Law § 24.  Executive Law § 25 addresses the use and allocation of local government resources in response to the threat or occurrence of a disaster; the statute is silent as to the time frame within which such aid or resources may be accepted, allocated and/or rendered.  Accordingly, we do not find that a municipality's powers under Executive Law § 25 may only be exercised during a declared state of emergency or in conjunction with a local emergency order (see Executive Law § 24 [1], [2]).[1]

_____

[1]  Although we agree with defendants that the immunity set forth in Executive Law § 25 (5) is not subject to the time limitations embodied in Executive Law § 24, we cannot help but note that, at the time of plaintiff's accident, defendants were not actively engaged in an effort to protect life and property;

This conclusion, however, is of little aid to defendants.

Executive Law § 25 (1) provides that, "[u]pon the threat or occurrence of a disaster, the chief executive of any political subdivision is hereby authorized and empowered to and shall use any and all facilities, equipment, supplies, personnel and other resources of his [or her] political subdivision in such manner as may be necessary or appropriate to cope with the disaster or any emergency resulting therefrom."  To be sure, this statute, which vests a political subdivision's chief executive "with the power to respond to a local disaster or the immediate threat of a disaster, . . . reflects an awareness by the . . . Legislature that in emergency situations prompt and immediate unilateral action is necessary to preserve and protect life and property" (Matter of Prospect v Cohalan, 109 AD2d 210, 217-218 [1985], affd 65 NY2d 867 [1985] [citations omitted]).  Consistent with that awareness, the statute further provides, as noted previously, that "[a] political subdivision shall not be liable for any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of any officer or employee in carrying out the provisions of this section" (Executive Law § 25 [5]).

In our view, the scope of the immunity conferred by Executive Law § 25 is clear.  When faced with a disaster, a political subdivision's chief executive may, for example, decide where to set up a makeshift hospital or aid station, prioritize and determine which streets to clear or allocate supplies and personnel as he or she sees fit, and such discretionary determinations, in turn, will not serve as a basis upon which to expose the political subdivision to liability.  In other words, a

they were removing storm debris from the DPW garage.  While this indeed may have been a necessary task and an important part of an overall effort to clean up the community and restore a full range of services to the County's residents, the immediate threat posed by Hurricane Irene and Tropical Storm Lee and the corresponding urgency associated with formulating an appropriate response thereto certainly had passed by the day of plaintiff's accident.

disgruntled homeowner who is confronted with a flooded basement and is living on an impassable residential street cannot seek to hold a locality liable for damages simply because its chief executive deemed it more important to first clear a path to the local hospital or to pump out the holding cells in the local police station. That said, the immunity conferred by Executive Law § 25 (5) does not, to our analysis, grant a political subdivision carte blanche to perform a discretionary function in any manner that it sees fit – particularly in a manner that poses a danger to the traveling public. Here, a valid – and discretionary – determination may well have been made that the removal of storm debris from, among other locations, the DPW garage was a priority and, further, that transporting such debris in open containers was the most efficient and expeditious way to do so. The discretionary nature of these broad, resource-based decisions, however, did not obviate the need for defendants to comply with the provisions of Vehicle and Traffic Law § 380-a (1) in terms of the actual transport of such debris. As the immunity conferred by Executive Law § 25 (5) does not, in our view, extend to the particular facts of this case, Supreme Court properly denied defendants' cross motion for summary judgment dismissing plaintiff's complaint.

As for plaintiff's motion for summary judgment on the issue of liability, the case law makes clear that the unexcused violation of a provision of the Vehicle and Traffic Law constitutes negligence per se (see McLeod v Taccone, 122 AD3d 1410, 1411 [2014]; Hazelton v D.A. Lajeunesse Bldg. & Remodeling, Inc., 38 AD3d 1071, 1072 [2007]; Baker v Joyal, 4 AD3d 596, 597 [2004], lv denied 2 NY3d 706 [2004]). Here, plaintiff alleged that defendants violated Vehicle and Traffic Law § 380-a (1), which provides that "[i]t shall be unlawful to operate on any public highway any open truck or trailer being utilized for the transportation of any loose substances, unless said truck or trailer has a cover, tarpaulin or other device of a type and specification . . . which completely closes in the opening on . . . said truck or trailer while said truck or trailer shall be so operated, so as to prevent the falling of any such substances therefrom. However, if the load is arranged so that no loose substance can fall from or blow out of such truck, the covering

is not necessary."[2]

        On a motion for summary judgment in the context of a personal injury action, the injured plaintiff first must demonstrate, among other things, that the defendant operated his or her vehicle in violation of the Vehicle and Traffic Law; assuming such a showing has been made, the burden then shifts to the defendant to tender sufficient admissible proof to raise a question of fact as to whether his or her violation of the relevant statute either did not actually occur or was excused (see e.g. Hazelton v D.A. Lajeunesse Bldg. & Remodeling, Inc., 38 AD3d at 1071-1072; Lowell v Peters, 3 AD3d 778, 780 [2004]; Luck v Tellier, 222 AD2d 783, 784-785 [1995]; McGraw v Ranieri, 202 AD2d 725, 726-727 [1994]).  Here, Vehicle and Traffic Law § 380-a (1) contains, to our reading, both an initial requirement — that a cover be utilized — as well as an exception/excuse for noncompliance — namely, that the load was arranged in such a fashion that no cover was necessary.  Supreme Court interpreted this poorly written statute as imposing upon plaintiff the obligation to prove both that a cover was not used and, due to the manner in which the load was arranged, that a cover was in fact actually necessary.

        We disagree.  In our view, in order to discharge her initial burden on her motion for summary judgment, plaintiff need

---

        [2]  The legislative history underlying Vehicle and Traffic Law § 380-a reflects that it was enacted to prevent the very hazard encountered by plaintiff here, i.e., flying or falling debris capable of causing personal injury or property damage (see Sponsor's Mem, Bill Jacket, L 1975, ch 418, § 1).  Notably, in a letter of support characterizing the bill as "a welcomed advancement in highway safety control," the State Police observed that "a piece of gravel falling from a truck going 55 [miles per hour] and spilling onto a vehicle going a similar speed in the opposite direction has the potential force of a discharged bullet" (State Police Mem in Support, Bill Jacket, L 1975, ch 418, § 1).  For his part, Hickey readily acknowledged that the use of a cover was considered to be a safety measure, stating, "I would have used [a cover] if I had one . . . [b]ecause it would have been safer."

only have shown that defendants failed to utilize a cover; at that point, the burden shifted to defendants to demonstrate that no statutory violation actually occurred because the load was arranged in such a manner that no cover was necessary. To hold otherwise would place a nearly insurmountable burden upon plaintiff, as the manner in which the container was loaded and the contents were arranged inevitably lies within the exclusive knowledge of defendants.

Here, in support of her motion for summary judgment, plaintiff tendered, among other things, portions of Hickey's examination before trial testimony, wherein Hickey readily admitted — and defendants do not otherwise dispute — that the open container that Hickey was transporting on the day in question was not covered in any fashion. Such proof, in our view, was sufficient to demonstrate defendants' violation of Vehicle and Traffic Law § 380-a (1) in the first instance,[3] thereby shifting the burden to defendants to tender sufficient proof in admissible form to establish, insofar as is relevant here, that the load was arranged in such a fashion that no cover was required. This defendants failed to do. Hickey testified that the open container already was loaded upon his arrival at the DPW garage and that he had no idea when — or by whom — the container had been loaded. Noticeably absent from the record is an affidavit from the County employee who loaded the container in question or, at the very least, an affidavit from someone who

---

[3] Even assuming that plaintiff was required to make a threshold showing that — due to the manner in which the debris was loaded/arranged — a cover indeed was necessary, we would find that plaintiff made such a showing here. Hickey admitted that he looked into the top of the open container prior to leaving the DPW garage on the day in question and that such container was "loaded right up to the top." As noted previously, Hickey also testified that he saw debris fly off the truck and thereafter observed debris scattered across the roadway. Under these circumstances, we would have no trouble concluding that plaintiff made a prima facie showing that a cover was required to protect the traveling public from the obvious hazard posed by falling and/or flying debris.

could attest to the general procedures and protocols followed in the loading of debris into such containers.  As the record is entirely lacking in proof as to the manner in which the container was loaded and/or the debris deposited therein was arranged, it necessarily follows that defendants fell short of raising a question of fact as to the necessity for the otherwise statutorily required cover.  Accordingly, plaintiff is entitled to summary judgment as to liability.  The parties' remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Lahtinen, J.P., Garry and Rose, JJ., concur.


ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as denied plaintiff's motion for summary judgment as to liability; said motion granted; and, as so modified, affirmed.


ENTER:

Robert D. Mayberger
Clerk of the Court