OPINION OF THE COURT

Per Curiam.

In this case as well as in Matter of Fullilove v Carey (48 NY2d 826), the fundamental question presented is not whether affirmative action is permissible or desirable. The question, simply and narrowly, is whether, under our governmental system, the central feature of which is distribution of powers, the executive has the authority to initiate affirmative action without legislative authorization.
Although the rule elsewhere may differ, the law in New York is clear.
The State Legislature, as well as the New York City Council, has unequivocally condemned discriminatory hiring practices. The executive clearly has the power and obligation to implement programs designed to prohibit discriminatory hiring practices. Indeed, the State Legislature has gone so far as to state that voluntary use of a State-approved affirmative action plan by private employers "shall not be an unlawful discriminatory practice” (Human Rights Law [Executive Law], § 296, subd 12).
But as this court stated in Matter of Broidrick v Lindsay (39 NY2d 641, 644, 646-647): "Nowhere in the law has the city council prescribed affirmative action to redress the effects of discrimination. There is a dramatic distinction between the expressed legislative policy of prohibiting employment discrimination and the mayoral policy of mandating employment 'percentages’.” Similarly there is a vast difference between permitting employers to voluntarily adopt an affirmative action program and mandating that this be done involuntarily under threat of legal sanctions.
The difference between obligations that require the taking of certain steps, and those that merely require one to refrain from others, is, in this sensitive area of racial relations, not merely one of degree, but of kind. Where the Legislature has set out nondiscrimination as the policy of the State, an order mandating that employers take certain actions cannot be viewed as merely one step further along a continuum.
In Matter of Broidrick (supra), because only specific admin *379 istrative regulations were in issue, only those regulations, and not the mayoral order in which they were grounded, were struck by this court as being in excess of the legislative authorization. This led some (although not the courts below) to conclude, mistakenly, that the defect could be cured by different regulations which did not prescribe specific percentage quotas.
The difficulty in Broidrick, as here, is not the means employed by the executive to impose affirmative action in hiring practices, but rather that the executive attempted it at all. At the same time we note the distinction, carefully preserved in Broidrick, between affirmative action in hiring practices, and executive affirmative action which "only would enlarge the pool of persons eligible for employment based on discrimination-free merit selection” (Matter of Broidrick v Lindsay, 39 NY2d 641, 649, supra).
In sum, we would emphasize that the desirability of adopting a policy of affirmative action in hiring practices, and mandating the same, is not a prerogative of the executive, but rather of the legislative branch and it is to those bodies that persons seeking to impose affirmative action should direct their attention.