482 F.Supp. 1179 (1980)
Edward L. KIRKLAND et al., Plaintiffs,
v.
The NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES et al., Defendants,
and
Albert Ribiero and Henry L. Coons, Intervenors-Defendants,
and
Dennis Fitzpatrick et al., Intervenors-Defendants.
No. 73 Civ. 1540.
United States District Court, S. D. New York.
January 21, 1980.
*1180 Jack Greenberg, Judith Reed, New York City, for plaintiffs.
Robert Abrams, Atty. Gen. of the State of New York, New York City, for defendants.
Judith A. Gordon, Asst. Atty. Gen., New York City, Rowley & Forrest, Albany, for Dennis Fitzpatrick, et al., intervenors-defendants; Jeffrey G. Plant, Albany, N. Y., of counsel.
LASKER, District Judge.
This case has been remanded by the Second Circuit Court of Appeals which affirmed an order of this court enjoining as unconstitutionally discriminatory the promotion of correctional sergeants based on the results of Examination No. 34-944, and requiring the development of criterion valid testing procedures in accordance with the Equal Employment Opportunity Commission Guidelines on Employment Selection Procedures, 29 C.F.R. §§ 1607.1 et seq. (1979) (the Guidelines), Kirkland v. New *1181 York State Dep't of Correctional Services, 520 F.2d 420, 431 (2d Cir. 1975).
Plaintiffs and defendants now apply for an order approving the proposed use of Examination No. 36-435 for selection of correctional sergeants. They also move for summary judgment dismissing the Fitzpatrick intervenors' complaint.
The decision whether to grant these requests is based on affidavits submitted by the parties and conferences with the court on the record in which were set forth the factual details relating to the criterion validity of the examination, its validity under the Guidelines, and the determination to add 250 points to the scores of Blacks and Hispanics. The documentary support includes defendants' report entitled "Correction Sergeant Selection System: Validity and Ethnic Effect"; three affidavits of Kenneth L. Siegal, the Principal Personnel Examiner for the New York State Department of Civil Service, who has a Master's Degree in Educational Psychology and Statistics, and who was responsible for the design and development of the Correction Sergeant Selection System; an affidavit of Richard S. Barrett who was employed by the EEOC to participate in the deliberation of the staff committee responsible for drafting the Guidelines and their clarifications and to prepare a training program for staff attorneys; a letter dated January 11, 1980 from Leroy D. Clark, General Counsel for the EEOC; and affidavits of correction officers employed by the state who took or administered the examination. The reader is referred to such documents for details relating to the nature of the proposed new examination and the procedures utilized to validate it.
Disposition of both requests for relief turns on resolution of the same issues: that is, whether the proposal meets the requirements set forth in this case by the Second Circuit in its opinion remanding for determination of an appropriate remedy. For the following reasons, both the application and the motion for summary judgment are granted.
First, there are no genuine issues of material fact which require trial. It is true that the intervenors have submitted a Rule 9(g) statement in opposition to the motion for summary judgment in which they assert numerous propositions which they describe as issues of material fact. However, the intervenors' papers do not allege facts which controvert those stated by plaintiffs and defendants in their 9(g) statement and supporting affidavits. Rather, they merely assert that factual questions exist (e. g., ¶¶ 10, 16(c), 16(e), 16(r)), and challenge the legal conclusions to be drawn from facts whose truth is not and cannot be challenged (e. g., ¶¶ 5, 7, 12, 13, 14, 15, 16(b)). In sum, the intervenors' papers raise legal issues only, which appropriately should be decided on a motion for summary judgment. Fed. R.Civ.Proc. 56(c).
Second, the proposed examination and addition of 250 points to the scores achieved by Black and Hispanic candidates satisfy the requirements established by the Second Circuit in this case. The intervenors oppose essentially two facets of the proposed order: the addition of 250 points to the scores achieved by minority applicants and the job performance evaluation component of the examination.
The addition of 250 points to the scores of minority applicants is claimed to establish a quota contrary to the mandate of the Court of Appeals; yet this is simply not true. The proposed plan does not establish a fixed number of minority members to be promoted without regard to the applicants' job performance. The true affect of the addition of 250 points to the scores of minority members will be merely to render the examination procedure balanced, whereas without the adjustment, the validated procedure appears to favor white candidates.
The intervenors further object that the 250 point adjustment violates the EEOC Guidelines.[1] It is undisputed that since Examination *1182 No. 36-435 is highly predictive of job performance for whites, while not as predictive of job performance for Blacks and Hispanics, Affidavit of Kenneth L. Siegal (September 26, 1979), the use of the test would be "unfair" as that term is used by the Guidelines. 29 C.F.R. § 1607.14(B)(8)(a) (1979). Accordingly, under the Guidelines, the use of Examination No. 36-435 may be "revis[ed] . . . to assure compatibility between the probability of successful job performance and the probability of being selected." Id. § 1607.14(B)(8)(d). Thus, the addition of 250 points, as a revision of the use of the examination is authorized by the Guidelines.[2] Affidavit of Richard S. Barrett, p. 4; Letter from Leroy D. Clark, General Counsel of the Equal Employment Opportunity Commission (January 11, 1980).
Intervenors have submitted no affidavits of experts and have offered no expert testimony that would controvert the facts established by plaintiffs' and defendants' experts. Instead, intervenors rely exclusively on argumentation of their counsel.
Finally, the intervenors object to the job performance rating component of the examination itself on the grounds that the criteria used by the raters are so subjective as to allow the introduction of the personal bias and favoritism of the raters. New York caselaw requires that examinations governed by the Civil Service Law use standards that are sufficiently objective and specific so that the ratings that result from an application of those standards be reviewable by other examiners. E. g., Sloat v. Board of Examiners, 274 N.Y. 367, 371, 9 N.E.2d 12 (1937); Fink v. Finegan, 270 N.Y. 356, 361, 1 N.E.2d 462 (1936). Nevertheless, if an order remedying unconstitutional discrimination and violation of federal antidiscrimination laws were inconsistent with state law, such an order would be valid under the Supremacy Clause of the Constitution. U.S.Const. art. VI, cl. 2. However, here, there is no need for the order to be inconsistent with state law, since the examination may be both non-discriminatory and use objective standards. We have, therefore, reviewed the proposed examination, as it is to be administered, both to determine whether it is sufficiently objective to meet the requirements of state law, as well as being non-discriminatory within the Fourteenth Amendment and other controlling Federal law. We find that it meets both standards. There is no merit to intervenors' argument that Examination No. 36-435 uses insufficiently objective standards to satisfy state law. The standards are set forth in paragraph-long descriptions that relate specifically to the duties of correction officers. Furthermore, the intervenors' contention of non-objectivity, is belied by the result of statistical testing of the standards that produced an inter-rater reliability coefficient of .80 out of 1.00, indicating that the raters understood the standards in nearly the same way as each othera fundamental demonstration of "objectivity". Affidavit of Kenneth L. Siegal, ¶ 3 (October 16, 1979).
Accordingly, the motion for summary judgment and the application to have the submitted order signed are granted.
It is so ordered.
NOTES
[1] 29 C.F.R. §§ 1607.1 et seq. (1979). These Guidelines were affirmed as controlling here by the Second Circuit. 520 F.2d 420, 426 (2d Cir. 1975).
[2] In a letter to the court, the intervenors argue that the decision in Fullilove v. Beame, 48 N.Y.2d 376, 423 N.Y.S.2d 144, 398 N.E.2d 765 (1979), mandates that the 250 points addition to the scores of Blacks and Hispanics cannot be approved. In Fullilove, the court voided executive orders of Governor Carey and former Mayor Beame directing the construction industry to implement affirmative action hiring programs to increase the number of minority and women workers because the executive branch of New York government had no authority "to initiate affirmative action without legislative authorization." That case is distinguishable for two reasons: first, turning on the authority vested in the executive branch of the state government, Fullilove bears no relevance to the authority of a district court implementing the mandate of the Second Circuit to order a remedy to the violation of the federal constitution and anti-discrimination laws. Second, even if Fullilove were relevant here, as noted earlier, the addition of 250 points is not equivalent to the setting of a quota, as intervenors claim. Rather, the adjustment of the scores of minority applicants is more aptly characterized as the type of action approved by the court "which `only would enlarge the pool of persons eligible for employment based on discrimination-free merit selection'" (quoting Broidrick v. Lindsay, 39 N.Y.2d 641, 649, 385 N.Y.S.2d 265, 269, 350 N.E.2d 595, 599 (1976)).