■ SUBCONTRACTORS TRADE ASSOCIATION et al., Appellants, v EDWARD I. KOCH et al., Respondents. — Order, Supreme Court, New York County (Ryp, J.), entered December 8, 1982, which dismissed the complaint, without prejudice and with leave to replead, reversed, on the law, and a declaration is made in favor of plaintiffs that Executive Order No. 53 and its implementing rules and regulations are unconstitutional, unlawful and unenforceable, without costs. This is a proceeding brought by 17 trade associations for an order declaring Executive Order No. 53 (EO 53) and its implementing rules and regulations to be unconstitutional, illegal and unenforceable. Section 1 of EO 53 sets forth its purpose as follows: "Section 1. Purpose. It shall be the purpose of this Order to promote the development of business and employment within economic development areas of the City of New York by ensuring that small enterprises conducting business in such areas, or employing economically disadvantaged persons, receive a greater share of all construction contracts awarded by the City of New York." Sections 3 and 4 thereof are particularly relevant and are repeated in their entirety: "§ 3. Construction Contracting. All contracting agency heads shall, consistent with the requirements of applicable City, State and Federal law, seek to ensure that not less than ten percent of the total dollar amount of all contracts awarded for construction projects during each fiscal year shall be awarded to locally based enterprises. § 4. Construction Subcontractors. A contracting agency shall, consistent with the requirements of applicable City, State and Federal law, include in every contract to which it becomes a party such terms and conditions as the Bureau may by regulation direct to provide as follows. (a) If any or all of the contract is subcontracted, not less than ten percent of the total dollar amount of the contract shall be awarded to locally based enterprises; except, where less than ten percent of the total dollar amount of the contract is subcontracted, such lesser percentage shall be so awarded. (b) The contractor shall not discriminate unlawfully on the basis of race, creed, color, national origin, sexual orientation or affectional preference in the selection of subcontractors." The term "locally based enterprise" (LBE) was initially defined in EO 53. Later it was redefined by the Bureau of Labor Services in rule 53.12 M. The definition of LBE found in rule 53.12 M is as follows: "M. 'LBE': a locally based enterprise which (i) at the time of the bidding on a contract: (a) has been in business for 3 tax years or more

and received in the preceding 3 tax years gross receipts averaging $500,000 or less on an annual basis; or (b) has been in business for less than 3 tax years and earned during that period gross receipts averaging $500,000 or less on an annual basis; or (c) has been in business for less than 1 tax year and has earned in that period an amount which when annualized is equal to $500,000 or less on an annual basis; and (ii) in the preceding tax year or, where the business has existed for less than a year, in such portion of the year, has: (a) earned at least 25 percent of its gross receipts from work performed on construction projects located in economic development areas; or (b) employed a work force of which at least 25 percent were economically disadvantaged persons." The first issue presented is whether a justiciable controversy is presented under CPLR 3001. The defendants maintain that no dispute has actually arisen under EO 53. Nonetheless the plaintiff trade associations are directly affected by and subject to EO 53. Therefore, they have the present standing and the present right to challenge the constitutionality and legality of that executive order (*Matter of Fullilove v Beame,* 48 NY2d 376; *Matter of Broidrick v Lindsay,* 39 NY2d 641). The second issue is whether a declaration should be made in favor of the plaintiffs. On two prior occasions, executive orders have been declared unconstitutional because the executive branch was improperly attempting to exercise legislative power to effectuate "affirmative action" (*Matter of Fullilove v Beame, supra; Matter of Broidrick v Lindsay, supra*). EO 53 and its implementing rules and regulations are but another undisguised attempt on the part of the executive branch to mandate unconstitutional "quotas". Sections 3 and 4 of EO 53 also violate subdivision 1 of section 103 of the General Municipal Law and subdivision b of section 343 of the New York City Charter. Those sections of EO 53 unlawfully permit LBE's to escape the competitive bidding provisions that control on both the State and municipal levels. Moreover, section 9 of EO 53 and rule 53.41 violate subdivision 1 of section 103 of the General Municipal Law insofar as they allow LBE's to proceed without posting proper security for their work. For the foregoing reasons, EO 53 and the implementing rules and regulations are declared to be unconstitutional, unlawful and unenforceable. Concur — Murphy, P. J., Silverman and Bloom, JJ.

Kupferman and Alexander, JJ., dissent in a memorandum by Alexander, J., as follows: Even if the conclusion that a justiciable controversy is presented by the petition herein is correct, a matter not entirely free from doubt (see *New York Public Interest Research Group v Carey,* 42 NY2d 527), Executive Order No. 53 is no more, in my view, than an exercise of the Mayor's clear authority as Chief Executive Officer to issue directives and adopt rules and regulations in regard to the execution of capital projects. (New York City Charter, § 228, subd e.) The order is neither directed toward establishing "racial quotas" nor is it the type of legislative fiat struck down by the Court of Appeals in *Broidrick v Lindsay* (39 NY2d 641) or *Fullilove v Beame* (48 NY2d 376). As pointed out by the city in its brief, the programs nullified by *Broidrick* and *Fullilove* sought to address "affirmative action" and as stressed by the Court of Appeals the mayoral orders were reasonably subject to the construction that they sought to preferentially benefit minority group members in violation of the stated public policy that all races should be treated equally. In distinction, here, the direction of the executive order is not toward the establishment of "racial quotas" but, rather toward improving the economic viability of depressed and deprived areas of the city by providing that the *attempt* be made to ensure that small enterprises conducting business in those areas, or employing economically disadvantaged persons, receive a greater share of all construction contracts awarded by the city. Thus the challenged programs seek to enlarge the pool of persons eligible for employment, based on discrimination — free merit

selection, by including economically disadvantaged enterprises and individuals. Moreover, the fact that neither the executive order nor the regulations promulgated thereunder is "mandatory" but rather provides that the agency heads *attempt* to assign 10% of the contract work to locally based enterprises, demonstrates that under the precatory language, there need be no lowering of standards or a violation of the competitive bidding requirements under the program, for the contract award would still be required to be made to the lowest "qualified bidder". It should not be assumed that merely because an effort is directed toward the economically deprived, that perforce there will be involved a "lowering of standards" or that "unqualified" persons will be the beneficiaries of that effort. For these reasons I would declare in favor of the respondents, that Executive Order No. 53 and the rules and regulations thereunder are constitutional.