OPINION OP THE COURT
Jasen, J.
The principal question before us is whether the Mayor of the City of New York, by Executive Order, may lawfully mandate that a 10% share of all construction contracts awarded by the city be given to “locally based enterprises”.
Defendants place heavy emphasis on the socioeconomic circumstances which purportedly gave rise to the issuance of the order. However, the issue presented for our determination is not what prompted the Mayor to issue the order or whether the order seeks to accomplish a desirable objective, but whether the Mayor was legally empowered to issue the order at all.
In an effort to promote the development of business and employment opportunities in economically depressed areas *426 of New York City, the Mayor issued Executive Order No. 53 to “ensur[e] that small enterprises conducting business in such areas, or employing economically disadvantaged persons, receive a greater share of all construction contracts awarded by the City of New York.” (Executive Order No. 53, § 1.)
Among other things, the order requires all agency heads to “seek to ensure that not less than ten percent of the total dollar amount of all contracts awarded for construction projects during each fiscal year shall be awarded to locally based enterprises [LBE].” (Executive Order No. 53, § 3.)[1]
Pursuant to authorization contained in the order, the Bureau of Labor Services, a mayoral agency, adopted implementing rules and regulations. (See City Record, March 6, 1981, p 507, cols 3 and 4.) In large part, the rules are simply definitional and do not alter the thrust of the policy objectives sought to be advanced by the order.
In September, 1981, plaintiffs, 17 trade associations, commenced a declaratory judgment action seeking invalidation of the Executive Order and the promulgated regulations. Defendants, Mayor Koch and the City of New York, responded by moving, before answer, pursuant to CPLR 3211 (subd [a], par 7), to dismiss the complaint for failure to state a cause of action. Special Term granted the motion and dismissed the complaint, with leave to replead, holding that plaintiffs failed to demonstrate the existence of a justiciable controversy. A divided Appellate Division reversed and declared the order and regulations to be “unconstitutional, unlawful and unenforceable”.
Preliminarily, we note that plaintiffs are subject to and directly affected by Executive Order No. 53 and, therefore, have standing to bring this action. (See Matter of Douglaston Civic Assn. v Galvin, 36 NY2d 1; see, also, Matter of Fullilove v Beame, 48 NY2d 376; Rapp v Carey, 44 NY2d 157; Matter Broidrick v Lindsay, 39 NY2d 641.) As to defendants’ claim that no actual controversy exists *427 which the courts may pass on, we disagree. Plaintiffs, who have a stake in the outcome of this action, challenged the legality of an Executive Order purporting to have the force of law. There being no factual questions to be confronted in deciding whether the Mayor had the authority to issue the Executive Order, an actual controversy is presented which the courts have power to resolve in a declaratory judgment action without the need to conduct a trial. (See Matter of Morgenthau v Erlbaum, 59 NY2d 143, 150; O’Hara v Del Bello, 47 NY2d 363; New York Foreign Trade Zone Operators v State Liq. Auth., 285 NY 272, 276; Rovello v Orofino Realty Co., 40 NY2d 633.)
We begin our analysis of the substantive issues presented by recognizing that the underlying structure of our representative system of government consists of three branches in which all governmental power is distributed — the executive, legislative and judicial (NY Const, art III, § 1; art IV, § 1; art VI; see, also, NY City Charter, ch 1, § 3; ch 2, § 21.) Respect for this structure and the system of checks and balances inherent therein requires that none of these branches be allowed to usurp powers residing entirely in another branch. (Youngstown Co. v Sawyer, 343 US 579; Matter of Nicholas v Kahn, 47 NY2d 24, 30-31.) In the case before us, we are called upon to decide, as we were in Matter of Fullilove v Beame (48 NY2d 376, supra), Rapp v Carey (44 NY2d 157, supra) and Matter of Broidrick v Lindsay (39 NY2d 641, supra), at what point an exercise of executive power becomes an unlawful infringement upon the legislative function.
In New York City, the City Council is the body vested with legislative power. (NY City Charter, ch 2, § 21.) The Mayor, as chief executive officer, is empowered to implement and enforce legislative pronouncements emanating from the Council, but in doing so the Mayor “may not go beyond stated legislative policy and prescribe a remedial device not embraced by the policy”. (Matter of Broidrick v Lindsay, supra, at pp 645-646.)
Plaintiffs contend that the Mayor has legislated by fiat a policy for which there is no grant of legislative power and that the principles espoused in Matter of Fullilove v Beame (supra) and Matter of Broidrick v Lindsay (supra) require *428 that the order be declared unconstitutional and invalid. It is also contended that the Mayor’s action is inconsistent with long-standing legislative pronouncements making competitive bidding, rather than size, location or financial status of the employees of the company seeking the contract, the sole criterion, with certain exceptions not relevant here, for awarding public construction contracts.
Defendants, on the other hand, argue that the Mayor had authority to issue Executive Order No. 53. They further assert that the order is only directory and that it cannot, therefore, be deemed to be inconsistent with legislation requiring competitive bidding.
Since we agree with plaintiffs that Executive Order No. 53 represents an unconstitutional usurpation of legislative power, we need not and do not address plaintiffs’ alternative argument that the Executive Order is inconsistent with existing law relative to competitive bidding. The order of the Appellate Division should, therefore, be affirmed.
It is true, as defendants point out, that the New York City Charter gives the Mayor broad powers. He is empowered to create or abolish individual positions or entire bureaus within his executive office (NY City Charter, § 3) and he may appoint department heads and commissioners not elected by the people (NY City Charter, § 6). The Mayor also possesses the city’s residual powers (NY City Charter, § 8, subd a) and is empowered to enter into contracts on behalf of the city (Matter of Bauch v City of New York, 21 NY2d 599, 605). We note, however, that the general power to enter into contracts which is bestowed upon the executive branch of government ordinarily cannot serve as a basis for creating a remedial plan for which the executive never received a grant of legislative power. (See Matter of Fullilove v Carey, 91 Misc 2d 531, 533, affd 62 AD2d 798, affd 48 NY2d 826.) Furthermore, subdivision e of section 228 of the Charter authorizes the Mayor to “issue directives and adopt rules and regulations in regard to the execution of capital projects”.
Plaintiffs do not challenge these general powers but, rather, assert that what the Mayor did by way of Executive Order No. 53 goes well beyond his executive powers and *429 actually creates, without having been granted authority to do so, a program at odds with existing legislative policy. We agree. In two similar cases, Matter of Fullilove v Beame (48 NY2d 376, supra) and Matter of Broidrick v Lindsay (39 NY2d 641, supra), we struck down executive action which went beyond enforcement of legislative enactments by prescribing remedial devices not embraced by stated legislative policy.[2] In those cases, the Executive Orders promulgated purported to enforce legislative enactments prohibiting discrimination in employment. However, because the executives lacked a grant of legislative authority to adopt affirmative action plans, the orders requiring affirmative action were declared invalid.
The same result must follow in this case. Where, as here, the executive adopts a plan specifying that a certain percentage of city construction contracts are to be allotted to a particular group or category of business enterprise, he has gone beyond his function of implementing general Charter-conferred powers. Such action constitutes an exercise of legislative power. (See Matter of Fullilove v Beame, supra; Matter of Broidrick v Lindsay, supra.) In order for the executive to lawfully mandate the award of construction contracts to a particular group or category of business enterprise, the legislature must specifically delegate that power to him and must provide adequate guidelines and standards for the implementation of that policy. (See Rapp v Carey, 44 NY2d 157, 162, supra; Packer Coll. Inst. v University of State of N. Y., 298 NY 184.) There has been no such specific legislative authority granted to the Mayor in this case. General Charter-conferred powers and City Council resolutions upon which defendants rely in no way purport to authorize the Mayor to issue Executive Order No. 53. However desirable the ostensible purpose may be, there is simply no legislative authority permitting the Mayor to unilaterally initiate this type of program or the means for effectuating it. In the absence of such specific *430 authority, the executive action must be deemed an unlawful usurpation of the legislative function. (Matter of Fullilove v Beame, 48 NY2d 376, Matter of Broidrick v Lindsay, 39 NY2d 641, supra.)
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Cooke and Judges Jones, Wachtler, Meyer, Simons and Kaye concur.
Order affirmed, with costs.

.. A locally based enterprise is defined as “a business enterprise which: (i) earned gross receipts of $500,000 or less during the appropriate period; and (ii) (A) earns a substantial amount of its gross receipts in an economic development area; or (B) employs a substantial number of economically disadvantaged persons.” (Executive Order No. 53, § 2, subd h.)

. It is irrelevant to the legal issue presented here that the remedial devices created by executive action in Matter of Fullilove v Beame (48 NY2d 376) and Matter of Broidrick v Lindsay (39 NY2d 641) were affirmative action programs establishing racial quotas while the device at issue here is a procedure for awarding a greater number of city construction contracts to LBE’s. The legal issue is the same in all three cases — whether the executive usurped the legislature’s function.