Meyer, J.
(dissenting). In concluding that the Mayor of New York City is not empowered by Constitution, Federal or State, or statute to bar those contracting with the city from discriminating in employment on a basis unrelated to bona fide occupational qualification, the majority ignores the difference between hiring quotas affirmatively imposed and a negative ban on arbitrary discrimination, and drastically extends this court’s prior decisions concerning the Mayor’s power with respect to city *365 contracts (Subcontractors Trade Assn. v Koch, 62 NY2d 422; Matter of Fullilove v Beame, 48 NY2d 376; Matter of Broidrick v Lindsay, 39 NY2d 641). I, therefore, respectfully dissent.
The conclusion that neither Constitution authorizes the Mayor to limit contracts with the city to entities that do not engage in arbitrary discrimination turns on the concept that the programs contracted for do not involve “State action.” There are a number of problems with that conclusion, however. First, plaintiffs’ challenge is to the facial validity of Executive Order No. 50 insofar as it affects all city contractors. Such contracts cover a broad range of mandated and discretionary services; as to the present plaintiffs alone, from counseling to senior citizen centers to foster care and adoption services. Foster care institutions of the same type as are involved here have, in fact, been found to be engaged in “State action” subject to the requirements of the Federal equal protection clause (Perez v Sugarman, 499 F2d 761), and in light of the total control over a child’s life that the city delegates to such institutions (as I have more fully outlined in Torres v Little Flower Children’s Servs., 64 NY2d 119, 130-132), the question whether their action is “State action” is not governed by the Supreme Court’s decision in Rendell-Baker v Kohn (457 US 830) regarding a private day school, which the majority deems controlling.
Second, whether a different standard of State action should apply under the equal protection clause of the State Constitution (art I, § 11) than the test applied under the 14th Amendment to the Federal Constitution is not as simple as footnote 6 in the majority opinion would make it appear. While we held in 1949 that the same standard would apply (Dorsey v Stuyvesant Town Corp., 299 NY 512, 530-531, cert denied 339 US 981), we have not had occasion to consider the question since then[1] and it should be reexamined in light of the court’s decision in Sharrock v Dell Buick-Cadillac (45 NY2d 152).
We held in Sharrock that a lesser degree of State involvement was required to trigger the due process clause of the State Constitution (art I, § 6) than would be required under the 14th Amendment (45 NY2d, at pp 159-161). That holding was based in part on the absence of any reference to State action in the text of the State constitutional provision {id., at p 160). There is a similar absence of any explicit State action requirement in the *366 State equal protection clause.[2] Furthermore, because a long line of authority holds that the protection of a due process clause contains within it the requirement of equal protection (Examining Bd. v Flores de Otero, 426 US 572, 601; Weinberger v Wiesenfeld, 420 US 636, 638, n 2; Frontiero v Richardson, 411 US 677, 680, n 5; Shapiro v Thompson, 394 US 618, 641-642; Schneider v Rusk, 377 US 163, 168; Bolling v Sharpe, 347 US 497, 499), it makes little sense to have differing standards for State action under the State equal protection clause and the State due process clause. Yet, by accepting plaintiffs’ facial challenge to Executive Order No. 50, the court rejects any attempt to apply the State equal protection clause to particular city contracts.
If, however, it be accepted that neither constitutional provision is controlling, there remains the question whether the Mayor can adopt the policy that the city not contract with those who refuse to agree that they will not discriminate arbitrarily in employment decisions. As the court below makes clear, there can be no question that across-the-board discrimination against homosexuals, unrelated to any bona fide qualification for a particular position, is invidious and irrational. Nor is there any question that Executive Order No. 50 permits a contractor to discriminate as to any of the prohibited categories (race, creed, color, national origin, sex, age, handicap, marital status, sexual orientation or affectional preference) if it can be shown to be legitimately related to the requirement of a particular job. Thus, Executive Order No. 50, by barring discrimination against candidates meriting employment for reasons irrational because unrelated to qualification for employment, does no more than enforce merit selection.
In Matter of Broidrick v Lindsay (39 NY2d 641, supra), we explicitly recognized the Mayor’s right to require selection on the basis of merit. There we struck down an Executive Order mandating affirmative action but were careful to note that, “Insofar as programs do not mandate percentage employment formulas, but only would enlarge the pool of persons eligible for employment based on discrimination-free merit selection, they are permissible under existing law” (id., at p 649). Yet, the *367 majority now rejects that view and reaches the remarkable conclusion that the Mayor has no power to require city contractors to make employment decisions on the basis of merit and fitness for the job. In other words, the Mayor cannot, by removing barriers to employment unrelated to qualification or merit, ensure that the city obtains the best possible services for the money it spends, because that policy has not been authorized or endorsed by appropriate legislation.
In fact, the Mayor “is empowered to enter into contracts * * * and to determine the manner of transacting the city’s business and affairs” (Matter of Bauch v City of New York, 21 NY2d 599, 605). In exercising that power, the Mayor’s obligation is to ensure that the city receive the greatest value for the lowest possible cost (see, e.g., Matter of Dairymen’s League Coop. Assn. v Murtagh, 274 App Div 591, 594-595, affd 299 NY 634). Thus, in Matter of Broidrick v Lindsay (39 NY2d 641, 648, supra), the court held that “cost minimization is a proper consideration in setting government procurement policy,” thereby explicitly recognizing the validity of the social policy embodied in Executive Order No. 50.
The majority holds, however, that notwithstanding the recognition in Matter of Broidrick v Lindsay (supra), and Matter of Fullilove v Beame (48 NY2d 376, 379, supra) of the Mayor’s power to require discrimination-free merit selection, he is permitted to ban particular kinds of discrimination by city contractors only if the State Legislature or City Council has either itself already done so or expressly authorized him to do so. But one searches in vain for any language in these cases, or in the other cases cited by the majority, that limits the Mayor’s power in this manner. Rapp v Carey (44 NY2d 157) invalidated an Executive Order issued by the Governor because it was not only unauthorized by any statute or constitutional provision, but was actually inconsistent with existing legislation (id., at pp 164-165). And the defect in the Executive Order in Subcontractors Trade Assn. v Koch (62 NY2d 422, 429, supra) was that it imposed an affirmative, remedial plan which required that “a certain percentage of city construction contracts * * * be allotted to a particular group or category of business enterprise”. Here, no affirmative action is mandated. There is only a ban on arbitrary discrimination, designed to implement the accepted social policy that the city should seek to get the most for its money.
Finally, in light of the majority’s reliance on separation of powers cases involving the Federal Constitution, it should be noted that a number of Federal courts have upheld presidential *368 Executive Orders barring discrimination in Federally funded projects on the ground that “the federal government has a vital interest in assuring that the largest possible pool of qualified manpower be available for the accomplishment of its projects” (Contractors Assn. v Secretary of Labor, 442 F2d 159, 171, cert denied 404 US 854; accord, United States v New Orleans Public Serv., 553 F2d 459, 465, vacated on other grounds 436 US 942, adhered to 638 F2d 899, cert denied 454 US 892; Farkas v Texas Instrument, 375 F2d 629, 632, n 1). Those decisions were favorably commented on in Matter of Broidrick v Lindsay (39 NY2d 641, 647-648, supra), although they were distinguished on the ground that the Executive Order there in issue applied to the private projects of city contractors as well as their city-funded work and, thus, was intended to promote a social policy far beyond cost minimization in the expenditure of public funds. In the present case, Executive Order No. 50 applies only to contracts that are funded in whole or in part by government moneys appropriated or controlled by the city.[3] Accordingly, it is carefully tailored to the policy of obtaining the best possible work effort from city contractors through a ban on arbitrary employment discrimination and is permissible under the prior decisions of this court. By reversing in this case, the majority adopts a new separation of powers principle that is inconsistent with both its own prior decisions and Federal case law.
Judges Jasen, Simons, Kaye, Alexander and Titone concur with Chief Judge Wachtler; Judge Meyer dissents and votes to affirm in a separate opinion.
Order modified, with costs to appellants, in accordance with the opinion herein and, as so modified, affirmed.

. Matter of Ester v Walters (56 NY2d 306), cited by the majority, dealt with the substantive scope of the protection against discrimination provided by the State Constitution, not with what constitutes State action.

. Article I, § 11, provides that, “No person shall be denied the equal protection of the laws of this state or any subdivision thereof.” Similarly, article I, § 6, states that, “No person shall be deprived of life, liberty or property without due process of law.” In contrast, the 14th Amendment is explicitly phrased in terms of State action: “nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.”

. Despite claims by some of the plaintiffs that the Executive Order and its implementing regulations apply to all work, public or private, by city contractors, the scope of the coverage is explained by the following statement from the Director of the City Bureau of Labor Services: “It is true that section 50.20(A) of the Regulations makes the non-discrimination requirement applicable to ‘[a]ll contractors doing business with the City without regard to the dollar amount or source of funding.’ However, the phrase ‘without regard to the dollar amount or source of funding’ was inserted not to expand the nondiscrimination requirement so as to cover programs wholly unrelated to City contract work but rather to clarify that the non-discrimination requirement is fully applicable to programs that the City funds only in part as well as to programs that the City contracts for but does not fund (e.g., City contracts using federal funds). The reference in section 50.20(B) to ‘[Contractors whose contracts are funded in whole or in part by federal or state funds’ likewise refers to contracts administered by and formally let by the City.”