OPINION OF THE COURT
Harold J. Hughes, J.
This proceeding presents two legal issues: (1) in the absence of specific legislative authorization, can the Public Health Council require nursing home operators to accept a specific *871 quota of Medicaid patients as a condition to obtaining approval to operate a residential health care facility; (2) can regulations which require a nursing home to discriminate against patients not sponsored by Medicaid in order to meet their Medicaid patient quota be upheld in the face of a legislative policy (Public Health Law § 2801-a [9] [b]) that a corporation operating a nursing home "shall not discriminate because of * * * sponsor in admission or retention of patients”.
Petitioner is a not-for-profit membership corporation consisting of approximately 230 private and charitable nursing home operators. The Public Health Council has been described as "a subsidiary agency” existing within the Department of Health consisting of the Commissioner of Health and 14 appointees of the Governor (Boreali v Axelrod, 130 AD2d 107, 109, affd 71 NY2d 1). The Council’s relationship to nursing homes arises through section 2801-a of the Public Health Law which requires that any individual, partnership, or corporation seeking to operate a nursing home must first obtain the approval of the Council by demonstrating that there is a public need for the facility and that the applicant possesses the requisite competence, character and financial ability to operate the nursing home. Subdivision (10) of section 2801-a authorizes the Council to enact regulations governing the application for, as well as the revocation, limitation or annulment of, approvals of establishment. It is the Council’s adoption of regulations known as the "Medicaid Patient Access Regulations”, appearing at 10 NYCRR 600.5, 670.1, and 670.3, that give rise to this litigation. The Medicaid Patient Access Regulations require that any applicant seeking approval for the operation of a nursing home must agree to admit a specified quota of Medicaid patients in order to obtain the Council’s approval.
The Medicaid program is funded by the Federal Government and participating States and is designed to provide medical care to those persons without adequate income or resources to acquire that care by making payments to qualified medical providers for medical services and care provided to eligible persons. New York State participates in the Medicaid program. As the Medicaid program is not socialized medicine as practiced in England or Canada, it has long been recognized that participation by a nursing home, or other health care provider is purely voluntary (Matter of Sigety v Ingraham, 29 NY2d 110, 115).
The regulations under review arise from a determination by *872 the respondents that some nursing homes are discriminating against some Medicaid patients with respect to admission to their facilities. Petitioner points out that according to data provided in part by the respondents, during 1986 17.7% of the State population over 65 years of age was eligible for Medicaid while the percentage of patients admitted to residential health care facilities was 52.24%. Petitioner further points out that during 1986 the average percentage of all patients in residential health care facilities who were enrolled in the Medicaid program was approximately 81%. Respondents counter that a study conducted for it in 1986 found that Medicaid-eligible patients had to wait 41% longer than a patient paying his or her own way for nursing home admission. Respondents point out that petitioner’s members have a financial incentive for giving preference to paying patients in that they can charge those patients more than the amount they receive for the care rendered to Medicaid patients.
The petition raises various theories as to why the regulations are invalid, many of which appear prima facie to have merit. One contention is that the Public Health Council has once again exceeded its authority as was the case with the Council’s ban on smoking in public places (Boreali v Axelrod, 71 NY2d 1, supra). However, the more compelling argument is that the respondents have created an affirmative action program which through a quota system requires that Medicaid patients be given favored treatment over private paying persons with respect to nursing home admission, and that the regulations directly contravene the statutory mandate set forth in subdivision (9) of section 2801-a of the Public Health Law.
As a procedural matter, the courts have made it clear that the proper vehicle for litigation attacking a regulation as void for having usurped the legislative role is that of a declaratory judgment action (Boreali v Axelrod, 71 NY2d 1, 8, supra). Consequently, the proceeding shall be converted to a declaratory judgment action.
Concerning the merits, the result of the challenged regulations is to require that anyone seeking the approval of the Council for the operation of a new residential health care facility must agree to accept a specified quota of Medicaid patients, or else have its application denied. The Commissioner of Health and the Council have made the public policy determination that the best way to obtain equal access to nursing homes for Medicaid patients is to adopt an affirmative *873 action program mandating that result. The fact that the Legislature has repeatedly declined to approve proposed legislation along the same lines is of no consequence. The fact that within the administrative process a fellow executive agency, the Office of Business Permits and Regulatory Assistance, objected to the regulations upon the ground that the Council lacked the legal authority to enact them did not sway the Commissioner and the Council from their mission of setting the correct social and economic policies of this State. Even a decision of the Third Department in Matter of Blue v Whalen (57 AD2d 240), which apparently prohibits the regulations under review, is no impediment to the social policies of the Commissioner and his Council because, as they point out at page 36 of their memorandum of law, the five Justices of the Appellate Division did not understand the holdings of the Court of Appeals cases cited in Matter of Blue, thus undermining the precedential value of that decision. Contrary to the respondents’ view of their role in government, Judge Bellacosa recently had occasion, in Matter of Campagna v Shaffer (73 NY2d 237, 242-243), to express the correct role of an administrative agency as follows: "Agencies, as creatures of the Legislature, act pursuant to specific grants of authority conferred by their creator. * * * It is correspondingly axiomatic, however, that an administrative officer has no power to declare through administrative fiat that which was never contemplated or delegated by the Legislature. An agency cannot by its regulations effect its vision of societal policy choices * * * and may adopt only rules and regulations which are in harmony with the statutory responsibilities it has been given to administer.”
In the area of affirmative action, the law of this State is settled that the executive branch cannot implement such a program absent explicit authorization from the Legislature (Matter of Broidrick v Lindsay, 39 NY2d 641). The Court of Appeals has stated that "the desirability of adopting a policy of affirmative action * * * and mandating the same, is not a prerogative of the executive, but rather of the legislative branch” (Matter of Fullilove v Beame, 48 NY2d 376, 379). Through footnote 2 of its decision in Subcontractors Trade Assn. v Koch (62 NY2d 422, 429), the Court of Appeals made clear that a suspect classification need not be involved in order to strike down an executive plan favoring some citizens over others through a quota system when that plan was not authorized by the Legislature. Finally, general language of a *874 statute such as Public Health Law § 2801-a (9) mandating nondiscrimination cannot be the basis for an affirmative action program created by the executive (Matter of Fullilove v Beame, supra, at 378).
In accordance with the foregoing case law the Medicaid Patient Access Regulations must be annulled. The respondents have not advanced, nor has the court discovered, any statute giving the Council the authority to create an affirmative action program requiring nursing homes to favor Medicaid patients over private paying patients in their admission policies. In fact, subdivision (9) of section 2801-a of the Public Health Law specifically prohibits the favoring of one patient over another based upon the sponsor of that patient.
Subdivision (9) (b) of section 2801-a of the Public Health Law provides that a corporation operating a nursing home "shall not discriminate because of * * * sponsor in admission or retention of patients.” The law is settled that a regulation must fail "if it contravenes the will of the Legislature as expressed in the statute” (State Div. of Human Rights v Genesee Hosp., 50 NY2d 113, 118). It is equally well settled that where "the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency” and the court will ascertain the purpose of the statute (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459). Here, the pertinent language of subdivision (9) of section 2801-a is unambiguous. It prohibits a nursing home from discriminating in its admission policies based upon the sponsor of the patient. The dictionary defines the word discriminate as, "to make a difference in treatment or favor on a basis other than individual merit” (Webster’s New Collegiate Dictionary [1977 ed]). The Council’s Medicaid Patient Access Regulations do just that, requiring a nursing home to favor a Medicaid patient over a private paying patient in order to meet its quota. It appears that the Medicaid Patient Access Regulations emanate from a misconstruction of Public Health Law § 2801-a by the Commissioner and his Council. The respondents’ construction is set forth at page 16 of their memorandum of law as follows: "The Legislature has declared that discrimination against Medicaid eligible patients is unlawful. PHL § 2801-a (9) (d)”.
Apparently the Commissioner and the Council interpret section 2801-a (9) (d) to only prohibit discrimination against Medicaid-eligible patients. The Legislature went far beyond *875 stating that discrimination against Medicaid patients is unlawful, by stating that discrimination against any patient based upon his or her sponsor is unlawful. Thus a regulation requiring a nursing home to discriminate against a private paying patient in favor of a Medicaid patient in order to meet its quota is a direct violation of the public policy of this State enacted by the Legislature through Public Health Law § 2801-a (9) (d).
In order to authorize an affirmative action plan such as the Council’s, there would need to be statutory language setting forth that the word discriminate as used in subdivision (9) of section 2801-a does not include discrimination against private paying patients. Such a provision is found in subdivision (12) of section 296 of the Human Rights Law (Executive Law § 290 et seq.) which provides that even though discrimination based upon sex or race is prohibited, such discrimination against white males is permissible if it is part of an affirmative action program to increase the employment of members of a minority group. There is no similar language in the pertinent provisions of the Public Health Law.
The court will grant judgment converting this proceeding to a declaratory judgment action and declaring that the Medicaid Patient Access Regulations set forth in 10 NYCRR 600.5, 670.1, 670.3 are invalid as having been enacted without express legislative authorization, and in violation of subdivision (9) of section 2801-a of the Public Health Law.