Gerald J. Hase, Jr., Respondent, v New York State Civil Service Department et al., Appellants.

Third Department, July 13, 1989

### APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Daniel Smirlock* of counsel), for appellants.

*Atlantic Legal Foundation (Martin S. Kaufman* of counsel), for respondent.

### OPINION OF THE COURT

MAHONEY, P. J.

In 1982, plaintiff took State civil service examinations for legal assistant I and II classifications. After the examination results were certified, a class action on behalf of blacks and Hispanics who had taken one of the tests was commenced in Federal District Court alleging discrimination in the testing and grading of the examinations. The court entered a consent decree, which invalidated the test results and required new selection procedures providing for equal employment opportunities *(Reid v State of New York,* US Dist Ct, SD NY, Oct. 14, 1983, Duffy, J.; *see generally, Civil Serv. Employees Assn. v New York Civ. Serv. Dept.,* 142 AD2d 326, *lv denied* 73 NY2d 706). In 1984, plaintiff took the new examinations, the scoring of which was considerably delayed due to the efforts to comply with the consent decree. Meanwhile, in May 1985, plaintiff took the State civil service examination for beverage control

investigator trainee and beverage control investigator trainee (Spanish speaking). He scored 78 on the examination for a ranking of 242 on the eligible list.

In June 1985, plaintiff filed complaints with the State Division of Human Rights (hereinafter Division) alleging discrimination based on his status as a white male regarding the beverage control investigator trainee and legal assistant positions. After investigations, the Division determined that there was no probable cause to sustain plaintiff's allegations. Plaintiff challenged these determinations in Supreme Court, which dismissed his petition, and we affirmed *(Matter of Hase v Governor's Off.,* 124 AD2d 916). Meanwhile, authorization to fill a beverage control investigator trainee (Spanish speaking) position was given. Plaintiff was scheduled to interview for the position but he was disqualified from consideration after he failed to appear. The vacancy was filled from the eligible list in February 1986.

In April 1986, after two separate eligible lists (one for black and Hispanic candidates and one for other candidates) were established for the legal assistant I and II positions in accordance with the Federal District Court consent decree, plaintiff commenced an action in Federal District Court challenging, *inter alia,* the establishment of two separate eligible lists. The court granted summary judgment dismissing plaintiff's complaint, holding that since the use of separate eligible lists was related to the District Court consent decree and plaintiff had already litigated his discrimination claim in State court, relitigation was precluded *(Hase v New York State Dept. of Civ. Serv.,* US Dist Ct, ND NY, Aug. 8, 1986, Munson, J.).

In April 1987, authorization to fill a beverage control investigator trainee position was given and plaintiff was 1 of 10 candidates interviewed. Although plaintiff was not reached for appointment, he remained on the eligible list for future consideration. In June 1987, plaintiff, acting *pro se,* commenced this action as a proceeding pursuant to CPLR article 78 alleging that the Governor's Executive Order No. 6 (9 NYCRR 4.6), imposing affirmative action requirements on State agencies, was contrary to the State constitutional requirement that appointment to the State civil service be based on merit and fitness (NY Const, art V, § 6). Defendants moved to dismiss on grounds of, *inter alia,* res judicata and failure to state a cause of action. Supreme Court, *inter alia,* converted the proceeding to an action seeking a declaratory judgment that Executive Order No. 6 violates the State constitutional merit and fitness

requirement and ordered defendants to answer.[1] After issue was joined, plaintiff moved for summary judgment, which defendants opposed. Supreme Court granted plaintiff's motion, holding that the affirmative action program mandated by Executive Order No. 6 judged people by sex, race and ethnic background, which is prohibited in the absence of legislative authority and contrary to the State constitutional requirement for appointment to the civil service based on merit and fitness (141 Misc 2d 868). Defendants appeal.

■ Initially, defendants interpose procedural objections to plaintiff's challenge to Executive Order No. 6. Defendants first argue that plaintiff has had ample opportunity to challenge Executive Order No. 6 in his prior State and Federal lawsuits and his failure to do so precludes his challenge in this action. Although the transactional analysis approach to res judicata, which bars all claims arising out of the same transactions or series of transactions once the underlying claim is finally concluded (see, O'Brien v City of Syracuse, 54 NY2d 353, 357), has been adopted in New York, we are satisfied that each of plaintiff's lawsuits involved distinct and later alleged injuries so that res judicata should not bar this action. The prior State court action was based on plaintiff's allegations to the Division about alleged discrimination in the delay in scoring the second legal assistant test and the qualifications for the beverage control investigator trainee positions. Plaintiff's Federal court complaint concerned alleged discrimination in the method of scoring the second legal assistant test. This action involves alleged improper affirmative action, resulting from Executive Order No. 6, in the hiring practices of State agencies. Notwithstanding allegations of improper discrimination common to each lawsuit, the allegations in each can be read to relate to subsequent, distinct events so that res judicata is not applicable to bar this action (see, Purcell v Regan, 126 AD2d 849, 851, lv denied 69 NY2d 613).

■ Defendants also argue that plaintiff's challenge should be rejected on grounds of justiciability. This doctrine, as applicable in declaratory judgment actions, requires that the plaintiff have a sufficient interest to constitute standing and that the controversy involve present prejudice to the plaintiff (see, American Ins. Assn. v Chu, 64 NY2d 379, 383, cert denied

---

1. Supreme Court also determined that various claims by plaintiff for individual relief were barred by prior litigation. These issues have not been appealed and, thus, do not concern us.

474 US 803). There is no dispute that plaintiff remains on at least one eligible list for appointment to the civil service. Thus, his alleged status as one not eligible for favored treatment under the challenged Executive Order, which may affect his opportunity for appointment, demonstrates that he has a sufficient interest to constitute standing *(see, Matter of Eaton Assocs. v Egan,* 142 AD2d 330, 334). Likewise, plaintiff's allegations of discrimination in hiring, as a result of the challenged Executive Order following appointments for jobs he sought and while he remains on the eligible list, indicates that this controversy involves present prejudice to him. Accordingly, we reject defendants' contentions that there is no justiciable controversy.[2]

It remains then to address the merits of plaintiff's challenge to Executive Order No. 6, which provides in pertinent part as follows:

"It is the policy of the State of New York that equal opportunity be assured in the State's personnel system and affirmative action provided in its administration, in accordance with the requirements of the State's Human Rights Law and the mandates of title VII of the Federal Civil Rights Act, as amended. Accordingly, it is the responsibility of the State's Department of Civil Service to enforce the State's policy of ensuring full and equal opportunity for minorities, women, disabled persons and Vietnam era veterans at all occupational levels of State government.

"NOW, THEREFORE, by virtue of the authority vested in me by the Constitution and laws of the State of New York, I, Mario M. Cuomo, Governor of the State of New York, do hereby order as follows:

"I. *Responsibilities of the President of the Civil Service Commission.*

"1. The President of the Civil Service Commission shall

---

2. In postargument submissions, plaintiff urges essentially that *Martin v Wilks* (490 US —, 109 S Ct 2180 [June 12, 1989]), decided after oral argument, requires us to conclude that plaintiff has standing in this action and defendants argue that *Martin* has no applicability to the instant case. In *Martin,* the United States Supreme Court held that "the impermissible collateral attack" doctrine does not preclude nonparties to an affirmative action consent decree from challenging actions taken under the decree. This appeal, however, involves a direct challenge to an executive affirmative action program and simply is not a collateral attack on a consent decree. Thus, the holding in *Martin* does not affect our consideration of the justiciability issue, which is, nonetheless, resolved in plaintiff's favor.

issue guidelines for the preparation of annual affirmative action plans and statewide goals and objectives for the employment of minorities, women, disabled persons and Vietnam era veterans. The Department of Civil Service shall also provide the staff work for the development of comprehensive statewide affirmative action policies, goals, objectives and implementation strategies. * * *

"III. *Development and Implementation of Affirmative Action Programs by State Agencies.*

"1. Each State agency or department shall develop a revised written affirmative action program, where necessary, including the development of specific goals and timetables for the prompt achievement of full and equal employment opportunity for minorities, women, disabled persons and Vietnam era veterans. The plan shall include an analysis of previous agency action to increase employment opportunities for members of these groups." (9 NYCRR 4.6.)

■ The Executive Order has reporting and record-keeping requirements and various other provisions to accomplish the substantive objectives. Supreme Court interpreted the Executive Order as having implemented an affirmative action program whereby individuals' merit and fitness are judged by their sex, race or ethnic background. We do not agree with this assessment and, therefore, reverse.

"Few constitutional questions in recent history have stirred as much debate" as the propriety of affirmative action programs *(DeFunis v Odegaard,* 416 US 312, 350 [Brennan, J., dissenting]). At least some of the confusion results from the lack of a precise definition of affirmative action, which can entail an infinite variety of programs. Our task in this particular case is eased by clear direction from the Court of Appeals, which has distinguished between impermissible "affirmative action in hiring practices, and executive affirmative action which 'only would enlarge the pool of persons eligible for employment based on discrimination-free merit selection' " *(Matter of Fullilove v Beame,* 48 NY2d 376, 379, quoting *Matter of Broidrick v Lindsay,* 39 NY2d 641, 649). This limited executive authority seems to stem from the Legislature's policy of nondiscrimination found in the Human Rights Law (Executive Law art 15), which does not, however, authorize the executive to mandate that employers take certain actions in hiring *(Matter of Fullilove v Beame, supra,* at 378). Since affirmative action is not explicitly defined in Exec-

utive Order No. 6, we must determine what affirmative action as contemplated by this order means.

Our reading of the Executive Order leads us to conclude that it mandates nothing more than permissible executive affirmative action to " 'enlarge the pool of persons eligible for employment based on discrimination-free merit selection' " *(supra,* at 379, quoting *Matter of Broidrick v Lindsay, supra).* The Executive Order makes explicit reference to the State's Human Rights Law which, as noted above, has been held to authorize the executive to expand the pool of applicants. Furthermore, the Executive Order is devoid of any reference to quotas or preferential treatment in hiring practices; indeed, it makes no reference to any hiring practices. Rather, it mandates programs to ensure "full and equal employment opportunity", which, in the absence of any reference to or reasonable interpretation impacting on hiring practices, must refer merely to expanding the pool of applicants. This is precisely the type of affirmative action program that the Court of Appeals has indicated that the executive can enact to implement the Legislature's nondiscrimination policy *(see, Under 21, Catholic Home Bur. for Dependent Children v City of New York,* 65 NY2d 344, 358).[3] Therefore, reversal and an appropriate declaration in defendants' favor is warranted *(see, Maurizzio v Lumbermens Mut. Cas. Co.,* 73 NY2d 951, 954).

CASEY, WEISS, LEVINE and HARVEY, JJ., concur.

Judgment reversed, on the law, without costs, and it is declared that Executive Order No. 6 (9 NYCRR 4.6) has not been shown to be unconstitutional.

---

3. Plaintiff does not challenge the inclusion of Vietnam-era veterans within the ambit of Executive Order No. 6 despite the apparent absence of this group from denomination in the Human Rights Law *(see,* Executive Law § 296), and so we do not address this issue.