Titone, J.
(dissenting). Today, this Court upholds the Public Health Council’s (PHC) adoption of the Medicaid Patient Access Regulations (10 NYCRR 600.5, 670.1, 670.3), which require that newly established nursing homes participating in the Medicaid program agree to maintain a certain percentage of Medicaid patients as a condition of licensure. Because I, like the courts below, would conclude that the PHC, in promulgating those regulations failed to act within the bounds of its lawfully delegated authority and instead attempted to "effect its [own] vision of societal policy choices” (Matter of Campagna v Shaffer, 73 NY2d 237, 242; see, Boreali v Axelrod, 71 NY2d 1), I respectfully dissent.
While, like the majority, I realize that Medicaid patients in this State unfortunately often experience more difficulty in gaining admission to nursing homes than do private paying patients, I am unable to agree that the Legislature intended the PHC to have the power to address this problem through the adoption of a quota system, whereby the limited number of nursing home beds in this State would be rationed between Medicaid and non-Medicaid patients based on a formula devised by that agency. Such a decision, in my view, constitutes an inherently legislative determination that only the people’s elected representatives can make.
Indeed, this case marks the first time that this Court has ever upheld the adoption of a broadly based quota remedy in the absence of a clear grant of authority from the Legislature (see, Subcontractors Trade Assn. v Koch, 62 NY2d 422; Matter of Fullilove v Carey, 48 NY2d 826; Matter of Fullilove v Beame, 48 NY2d 376; Matter of Broidrick v Lindsay, 39 NY2d 641). While our prior cases all concerned quotas established by the fiat of an elected executive (see, Boreali v Axelrod, 71 NY2d 1, 11, n 2, supra), their underlying rationale — that the decision to adopt a quota remedy is itself a "fundamental policy-making” choice that only the Legislature can make (id., at 9) — -is equally relevant in the present context. Thus, unless it may be concluded that the Legislature, either expressly or by necessary implication, intended to confer upon the PHC *352 the power to adopt such a remedy (see, Matter of Campagna v Shaffer, 73 NY2d 237, 242, supra; Matter of Trump-Equitable Fifth Ave. Co. v Gliedman, 57 NY2d 588, 595; see also, Subcontractors Trade Assn. v Koch, 62 NY2d 422, 429, supra), this Court has no choice but to strike down the challenged regulations as ultra vires, no matter how necessary and beneficial the agency may perceive them to be.
The majority, relying principally on section 2801-a (3) (a) of the Public Health Law, holds that adoption of the challenged regulations was "well within” the authority delegated to the PHC. I cannot agree. That section, by its own terms, does nothing more than authorize the PHC to consider, on a case-by-case basis, "the public need for the existence of [an] institution at the time and place and under the circumstances proposed” before approving its establishment. There is no indication in the legislative history or otherwise that the section was, as the majority apparently concludes, intended by the Legislature to supply the PHC with broad powers to adopt whatever measures it deems necessary to "assure that nursing homes which voluntarily participate in the Medicaid program satisfy the public need.” (Majority opn, at 345.)
Nor does the Legislature’s decision to prohibit discrimination against Medicaid patients and its declaration that the providing of "[m]edical assistance for needy persons [is] a matter of public concern” (see, Public Health Law § 2801-a [9] [d];[1] Social Services Law § 363) supply a basis for inferring that the Legislature contemplated that the PHC would have the power to adopt a Medicaid quota system. As former Chief Judge Breitel stated in Matter of Broidrick v Lindsay: "There is a dramatic distinction between [an] expressed legislative policy of prohibiting * * * discrimination and * * * [a] policy of mandating * * * 'percentages’ ” (39 NY2d 641, 647, supra). Indeed, we have repeatedly stressed that the latter "cannot be viewed as merely one step further along [the] continuum” (Matter of Fullilove v Beame, 48 NY2d 376, 378, supra).
Furthermore, the challenged regulations, in addition to establishing a new and different policy not authorized by the Legislature, actually conflict with the already existing policy that participation in the Medicaid program is completely voluntary and includes the right to withdraw at anytime *353 (Matter of Sigety v Ingraham, 29 NY2d 110; Matter of Kaye v Whalen, 56 AD2d 111, affd 44 NY2d 754; Matter of Blue v Whalen, 57 AD2d 240, lv denied 43 NY2d 642). By providing that those nursing home operators who initially choose to participate in the Medicaid program but later decide to withdraw from it are subject to having their licenses revoked, the regulations, in effect, work to convert what was intended to be a voluntary program into a compulsory one.[2]
In sum, I would conclude that the PHC, in adopting the quota remedy implemented by the Medicaid Patient Access Regulations, has "leap[ed] well beyond th[e] legislative articulation”[3] of policy contained in section 2801-a (3) (a); (9) (d) and (10) (a),[4] and effected its own vision of societal policy choices over subjects not contemplated by the Legislature. Accordingly, I dissent.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander and Bellacosa concur with Judge Hancock, Jr.; Judge Titone dissents and votes to affirm in a separate opinion.
Order reversed, etc.

. Although Public Health Law § 2801-a (9) (d) bars discrimination based upon "sponsor,” the term "sponsor” would appear to include those patients whose medical needs are paid for by the Medicaid program.

. 10 NYCRR 600.5 (a) (10), in no uncertain terms, states that "[a]n approval of establishment may be revoked, limited or annulled by the Public Health Council if the council finds * * * that the established operator has failed to comply fully with any condition, limitation or other requirement imposed as part of, or in conjunction with, the approval of establishment” (emphasis added). In spite of the majority’s conclusion to the contrary, there is absolutely no indication that the PHC intended this regulation not to apply to nursing home operators who voluntarily withdraw from the Medicaid program. While the majority relies upon 10 NYCRR 670.3 (c) (1), that section merely states that "[a]n application by an applicant that is or will be a provider that participates in the medical assistance (Medicaid) program shall not be approved unless the applicant agrees to comply with the requirements of this subdivision. An applicant that, at the time of consideration of its application by the Public Health Council, proposes not to participate in the Medicaid program may be approved, provided all other review criteria have been met” (emphasis added).

. Matter of Campagna v Shaffer (73 NY2d 237, 243).

. Public Health Law § 2801-a (10) (a) authorizes the Public Health Council to adopt rules and regulations "to effectuate the provisions and purposes of [section 2801-a].”